SMITH & THAYER CO. *vs.* JOHN A. ARNOLD.

APRIL 9, 1915.

PRESENT: Johnson, C. J., Parkhurst, Sweetland, Vincent, and Baker, JJ.

(1) *Corporations. Director's Liability.*

Under Gen. Laws, 1909, cap. 214, § 12, relating to manufacturing corporations, providing that the whole amount of the debts which any such corporation shall at any time owe shall not exceed the amount of its capital

stock actually paid in, and that in case of any excess the directors under whose administration it shall happen shall be jointly and severally liable, to the extent of such excess for all the debts of the company then existing and for all that shall be contracted as long as they shall respectively continue in office and until the debts shall be reduced to the amount of the capital stock of such company paid in, and under U. S. Bankruptcy Act, 1898 Section 7 (8) requiring a bankrupt to file a schedule of the property and a list of his creditors showing the amount due each of them, such schedule furnishes *prima facie* evidence of the amount of the debts, as of the date of the adjudication in the case of involuntary bankrupts, and such schedule was admissible in evidence in an action to enforce the statutory liability of a director; and if there were any debts in such schedule, arising otherwise than by contract or only contingently and not absolutely due, or that should be excluded from consideration, it was the duty of defendant to offer that fact by way of defence.

*(2)   Corporations.   Director's Liability.*

Where in an action to enforce a director's liability, under Gen. Laws, 1909, cap. 214, § 12, a plaintiff proves by the admission of the corporation by its bankruptcy schedules the whole amount of the debts owed by the corporation at the date of adjudication, it is not necessary for him to negative the existence of any possible items of indebtedness which should not legally be considered, but this is a matter of defence within the means of knowledge of defendant.

*(3)   Corporations.   Director's Liability.*

In an action to enforce a director's liability under Gen. Laws, 1909, cap. 214, § 12, where the plaintiff has proved the bankruptcy of the corporation and the amount of debts owed, he is entitled to a *prima facie* presumption that this state of things continued and if, in fact, the excess of debts had been paid so as to exonerate defendant, it was a matter for defendant to prove.

*(4)   Corporations.   Director's Liability.*

In an action to enforce a director's liability under Gen. Laws, 1909, cap. 214, § 12, where defendant was also president of the company and a stockholder for several years, down to the time of its failure, and actively interested in its affairs, it will be presumed in the absence of denial on the part of defendant that he was cognizant of the proceedings at the time of the failure; and it will not be presumed that he had no knowledge of the contents of the bankruptcy schedules.

*(5)   Corporations.   Director's Liability.*

In an action to enforce a director's liability under Gen. Laws, 1909, cap. 214, § 12, a note of the corporation secured by mortgage on real estate, was as much a debt owed by the company as any other debt, and it was immaterial that the company was solvent when the note was made and that it had then and later sufficient assets over and above the real estate mortgaged so that

its capital stock fund was not impaired, and so that it could then have paid this note out of surplus assets, in view of the fact that it did not pay the note, and that after the adjudication of the company in bankruptcy its debts, including this note, had been increased in excess of its paid-in capital.

*(6)   Corporations.   Director's Liability.*

Where after an adjudication in bankruptcy a mortgage on real estate which secured a note for $4,000 was foreclosed, and at the time of the sale there were no surplus assets of the corporation, but its entire property in liquidation paid only a percentage on its indebtedness, the amount for which the real estate was sold cannot be considered as a reduction of "the amount of debts owed" by the corporation, in excess of its paid-in capital stock, but such amount stands on the same footing as payments made by the trustee in bankruptcy in liquidation of the bankrupt estate, and is not to be credited for the use of a director to reduce his liability under Gen. Laws, 1909, cap. 214, § 12.

TRESPASS ON THE CASE under Gen. Laws, Cap. 214, Section 12.   Heard on exceptions of defendant and overruled.

PARKHURST, J.   This is an action of the case brought by the plaintiff, a creditor of the Pawtucket Steam & Gas Pipe Company, a Rhode Island corporation, to enforce a certain statutory liability to pay the plaintiff's claim alleged to have been incurred by the defendant as a director of said company under the provisions of Pub. St. R. I. 1882, Chap. 155, reënacted as Gen. Laws, R. I. 1896, Chap. 180, and Gen. Laws, R. I. 1909, Chap. 214.

The declaration originally contained three counts, but only the first need be considered, the other two having been withdrawn by agreement.   This first count seeks to impose upon the defendant a director's liability on the ground that the debts of the corporation were permitted to exceed the amount of its capital stock paid in, under the sections of the above-mentioned statute reading as follows:

"The whole amount of the debts which any such corporation shall at any time owe shall not exceed the amount of its capital stock actually paid in; and in case of any excess, the directors under whose administration it shall happen shall be jointly and severally liable, to the extent of such excess,

for all the debts of the company then existing, and for all that shall be contracted as long as they shall respectively continue in office, and until the debts shall be reduced to the amount of the capital stock of such company paid in.

"Any director who shall be absent at the time of contracting any debt contrary to the foregoing provisions, or who shall object thereto, may exempt himself from said liability by forthwith giving notice of the fact to the stockholders at a meeting which he may call for that purpose."

(Pub. St. R. I. 1882, Chap. 155, §§ 15, 16.)

(Gen. Laws, R. I. 1896, Chap. 180, §§ 15, 16.)

(Gen. Laws, R. I. 1909, Chap. 214, §§ 12, 13.)

To this count the defendant pleaded the general issue, and a special plea which was subsequently withdrawn.

The case was heard on the general issue before Mr. Justice Sweeney and a jury on April 29 and 30, 1914. For the purposes of the trial it was admitted that the corporation was incorporated under and amenable to the statutes as set forth in the declaration; that John A. Arnold was a director thereof from July 24, 1903, to May 4, 1907; and that it issued its capital stock as follows:

| | |
|---|---|
| Preferred Stock, 107 $\frac{27}{100}$ shares, par value....... | $10,727 00 |
| Common Stock, 527 shares, par value......... | 52,700 00 |
| Total stock issued.................... | $63,427 00 |

It was further admitted that on July 22, 1913, subsequent to the commencement of this action, "the sum of $1,575.59 was paid to the J. L. Mott Iron Works in full satisfaction of the balance of its claim as a creditor of the Pawtucket Steam & Gas Pipe Company," and that said sum should be applied to reduce by that amount any liability of the defendant at present existing, because of the alleged excess of the corporation's indebtedness over its capital stock paid in. It was proved that the balance of the debt owed by the corporation to the plaintiff amounted to $733.99, and with interest added in the sum of $217.87, to $951.86; that this

debt was contracted between the plaintiff and the corporation between February 1, 1907, and April 22, 1907; and that dividends in bankruptcy paid by the trustee of the corporation in bankruptcy from July 25, 1907, to December 3, 1908, amounting to $35\frac{1}{10}$ per cent. upon the face of the claim, were duly credited, so that the balance of the account without interest was found to be $733.99, as above stated.

It further appeared that the corporation, having become insolvent and having made an assignment May 4, 1907, was put into bankruptcy by its creditors and was adjudicated a bankrupt in the United States District Court for Rhode Island May 29, 1907; the bankrupt's schedules filed in the United States District Court, and sworn to by the treasurer of the Pawtucket Steam & Gas Pipe Company were produced in evidence through the clerk of the United States District Court, and against objection and exception on behalf of the defendant, it was permitted to be shown from these schedules, that the admitted liabilities of the Pawtucket Steam & Gas Pipe Company were stated to be $67,943.66, of which $4,000 was a note secured by mortgage on real estate, and the balance unsecured claims.

As to the amount of outstanding capital stock, it is specifically admitted that the corporation had issued stock of the par value of $63,427, as above shown; it appears to be assumed on both sides of this case that most of this stock had been paid for when issued, and no claim is made that any of the shares had not been paid for except that the plaintiff attempted to show that nine shares were unpaid; there is evidence to show that seven of these were paid for by transfer of property and good will of a business, and that one of them was paid for in cash; it is not clear whether the ninth share was ever paid for or not; we think the plaintiff has failed to show that any of the shares was unpaid, and in the absence of more satisfactory proof than we have before us we shall treat the whole outstanding stock ($63,427) as "actually paid in" in the language of the statute, for the purposes of this case.

From the admissions and evidence in the case we think that it may be fairly stated that the extent of the director's liability is made out as follows:

| | | |
|---|---:|---:|
| Total indebtedness | $67,943 | 66 |
| Capital stock issued | 63,427 | 00 |
| | | |
| Excess of debts over capital stock | $4,516 | 66 |
| Amount of Mott execution | 1,575 | 59 |
| | | |
| Balance of Arnold liability | $2,941 | 07 |

The bill of exceptions sets forth eleven grounds of exceptions, of which only the first, third, fourth, fifth, seventh, eighth, tenth and eleventh are pressed at this time. They are as follows:

"1. During the trial of said cause William P. Cross, Clerk of the United States District Court, was sworn as a witness and produced certain bankruptcy papers filed in said United States District Court by the Pawtucket Steam & Gas Pipe 'Company, Bankrupt; against the objection of the defendant said witness was allowed to read from said bankruptcy schedules a statement of the liabilities of said Pawtucket Steam & Gas Pipe Company, as a bankrupt, on May 29, 1907. To the ruling of the presiding justice in admitting this testimony the defendant duly excepted, as appears in said transcript of evidence, Exhibit A, at pages 3 and 8, questions 5, 6, 7 and 8. The defendant submits that this ruling admitting said testimony was erroneous and prejudicial to his cause, and asks that his exception, duly taken at the time, may now be allowed."

"3. The defendant during said cause offered to show through John A. Arnold, a witness produced by the defendant, that at the time the Pawtucket Steam & Gas Pipe Company placed a mortgage on its property, in 1901, said mortgage did not impair the fund created by the paid-in capital stock. The court sustained the objection of the

plaintiff to the admission of this testimony and refused to permit the defendant to introduce evidence on this point, as appears in said transcript of evidence, Exhibit A, on pages 36, 37, 38, questions 11, 12 and 13. The defendant submits that this ruling excluding said testimony was erroneous and prejudicial to his cause, and asks that his exception, duly taken at the time, may now be allowed.

"4. During the trial of said cause the defendant offered to show through John A. Arnold, a witness produced in his behalf, that at the time the Pawtucket Steam & Gas Pipe Company gave a mortgage on its property, in 1901, the assets of said corporation exceeded its liabilities, and that said mortgage did not impair the fund created by the paid-in capital stock of said company. On the objection of the plaintiff the presiding justice excluded this testimony, as appears in said transcript of evidence, Exhibit A, at pages 38, 39, 40, questions 14 and 15. The defendant submits that this ruling excluding said testimony was erroneous and prejudicial to his cause, and asks that his objection, duly taken at the time, may now be allowed.

"5. During the trial of said cause the defendant offered to show through John A. Arnold, a witness produced in his behalf, that at or subsequent to the date when the Pawtucket Steam & Gas Pipe Company placed the said mortgage on its property, in 1901, the assets of said Pawtucket Steam & Gas Pipe Company were greater than its liabilities. On the objection of the plaintiff the court excluded said testimony, as appears in said transcript of evidence, Exhibit A, at page 40, question 16. The defendant submits that this ruling excluding said testimony was erroneous and prejudicial to his cause, and asks that his exception, duly taken at the time, may now be allowed."

.  .  .  .  .  .  .  .  .  .  .

"7. During the trial of said cause the defendant formally offered to prove that the liabilities of the Pawtucket Steam & Gas Pipe Company were reduced by the foreclosure of the mortgage given by the Pawtucket Steam & Gas

Pipe Company on certain of its real estate, in 1901, and by the sale of said property under said foreclosure to the extent of $3,610, which said offer was made to establish a proper reduction of the indebtedness of said Pawtucket Steam & Gas Pipe Company. On the objection of the plaintiff the court excluded the testimony so offered by the defendant, as appears in said transcript of evidence, Exhibit A, at page 51. The defendant submits that this ruling excluding said testimony was erroneous and prejudicial to his cause, and asks that his exception, duly taken at the time, may now be allowed.

"8. During the trial of said cause the defendant offered in evidence a mortgagee's deed to show that at the time the suit at bar was instituted by the plaintiff the total indebtedness of the Pawtucket Steam & Gas Pipe Company had been reduced by the amount received upon the foreclosure of said mortgage. On the objection of the plaintiff the presiding justice excluded said testimony, as appears in said transcript of evidence, Exhibit A, at pages 54 and 55. The defendant submits that this ruling excluding said testimony was erroneous and prejudicial to his cause, and asks that his exception, duly taken at the time, may now be allowed."

.    .    .    .    .    .    .    .    .    .    .

"10. At the close of the testimony in said cause the defendant moved the court to direct a verdict for the defendant. The presiding justice denied the defendant's said motion, as appears in said transcript, Exhibit A, at page 56. The defendant submits that this ruling denying defendant's said motion was erroneous and prejudicial to his cause, and asks that his exception, duly taken at the time, may now be allowed.

"11. At the close of the testimony of said cause the plaintiff moved the court to direct a verdict in its favor for the sum of $951.86. Against the objection of the defendant the court granted the plaintiff's said motion, and directed a verdict for the plaintiff in the said sum of $951.86, as appears in said transcript of evidence, Exhibit A, at pages

55 and 56.   The defendant submits that this ruling directing a verdict for the plaintiff in said sum was erroneous and prejudicial to his cause, and asks that his exception, duly taken at the time, may now be allowed."

A large part of the defendant's argument upon the first, tenth and eleventh exceptions is devoted to an attempt to show that the plaintiff has not made out a *prima facie* case; and it is urged that it was the duty of the plaintiff to prove that all the debts owed by the corporation were incurred contractually, and were due absolutely and not contingently; and that such debts were due and unpaid at the date of the plaintiff's writ; and that the plaintiff has failed to make such proof.   We are not convinced by such argument.   The plaintiff put in evidence the bankruptcy schedules of the Pawtucket Steam & Gas Pipe Company, and proved therefrom the admission by that company under oath of its treasurer in   May, 1907, of   total debts   amounting to $67,943.66, which was largely in excess of "the amount of its capital stock actually paid in," as shown in the discussion of the evidence above.   We find no reason urged, and no authority cited on behalf of the defendant which convinces this court that such evidence was improperly admitted.   The bankruptcy proceedings were under the United States Bankruptcy Act of 1898, which by Section 7 requires that the bankrupt shall "(8) prepare, make oath to and file in court within ten days, unless further time is granted, after the adjudication, if an involuntary bankrupt, and with the petition of a voluntary bankrupt, a schedule of his property, showing the amount and kind of property, the location thereof, its money value in detail, and a list of his creditors, showing their residences, if known, if unknown, that fact, to be stated, the amounts due each of them, the consideration thereof, the security held by them, if any.". . . . The filing of this schedule as thus provided constitutes a solemn act of the corporation in a lawful proceeding before a court of competent jurisdiction and furnishes *prima facie* evidence of the amount of its debts as of the time of the

filing of the schedule, in the case of the voluntary bankrupt and as of the time of the adjudication of bankruptcy in case of an involuntary bankrupt (as this corporation was). It is presumably a true statement of the assets and liabilities of the corporation as of the date of the adjudication (May 29, 1907). In putting this evidence before the Superior Court, it was expressly stated by the witness (Cross) that the schedule showed a $4,000 note secured by mortgage and the balance unsecured claims. There is nothing in this from which any inference should be drawn that any portion of the total debts was of a character such as should exclude that portion from consideration here, as being debts arising otherwise than by contract, or as being only contingently and not absolutely due at that time. If in fact there were any such debts shown in the schedule, it was the duty of the defendant's counsel to call attention to that fact by way of defence, when the schedule was before the court. It does not appear that counsel for the defence attempted to show any such facts regarding any part of the total indebtedness; his attention was directed solely to the matter of the mortgage note of $4,000, secured upon real estate, with a view to claiming that by reason of the subsequent sale of the mortgaged property a reduction of the total debt was made whereby the defendant was exonerated from liability, as will develop in the consideration of the subsequent exceptions. The plaintiff alleged in its declaration an excess of debts owed over the amount of capital stock actually paid in, under the statute above quoted, whereby the defendant's liability as a director to pay the excess had accrued. The statute simply says: "The whole amount of the debts which any such corporation shall at any time owe shall not exceed the amount of its capital stock actually paid in;" the plaintiff (2) proves by the admission of the corporation by its bankruptcy schedule "the whole amount of the debts" owed by the corporation at the date of adjudication of bankruptcy; it was not necessary for the plaintiff under this language of the statute to attempt by way of anticipation to negative

the existence of any possible items of indebtedness which the legal construction of the statute might determine should not be considered as a part of such debts for the purposes of the statute; that was manifestly a matter of defence, which, if it in fact existed, was quite within the knowledge or means of knowledge of the defendant.

(3)   The defendant further insists that even if the proof of the total amount of debts owed by means of the schedule is to be deemed sufficient *prima facie* proof for the purposes of this case, yet such proof only relates to the date of adjudication in bankruptcy (May 29, 1907), and is not sufficient proof that such excess of indebtedness existed at the date of the plaintiff's writ, which was issued May 19, 1909, and served May 20, 1909; and that the plaintiff should have shown as a part of its case that such excess of debts continued down to the date of the writ.    And the defendant suggests and argues that in some way or other this excess of debts may have been paid in the meantime so as to exonerate the defendant, and that it was the duty of the plaintiff to have negatived this possibility.    But the plaintiff having proved the bankruptcy of the corporation, and the amount of debts owed, was entitled to a *prima facie* presumption that this state of things continued; and if in fact the excess of debts had been paid so as to exonerate the defendant, it was a matter for the defendant to prove.    16 Cyc. pp. 1052–1054 and cases cited; p. 1054, notes 25–27.

The fact to be proven by the plaintiff was that the total amount of debts owed by the corporation exceeded the paid-in capital stock; this schedule of liabilities under oath of the treasurer of the corporation was *prima facie* evidence of that fact as against the corporation and its directors, and it was expressly ruled by the trial judge that it was only *prima facie* proof and subject to be rebutted on behalf of the defendant if he saw fit to attempt so to do.

(4)   It cannot be successfully maintained that the defendant should be presumed not to have knowledge of the contents of the bankruptcy schedules.  He was president of the cor-

poration and a member of the board of directors and a stockholder for several years down to the time of its failure, and his own evidence shows that he was actively interested in its affairs, and cognizant of them to the extent of taking an active part in the purchase of property, the issue of the stock, and the payment of certain pressing debts of the company for which he took preferred stock. It will be presumed, in the absence of any denial on his part, that he was fully cognizant of the affairs and proceedings of the corporation at the date of its failure; and it was quite competent for him to have produced any facts which would have been available for his defence, if such facts existed. See *Olney* v. *Chadsey*, 7 R. I. 224.

On careful examination of the whole record we are satisfied that the plaintiff made out a *prima facie* case for recovery upon all points.

(5) We now come to the real defence in this case as indicated by exceptions Nos. 3, 4, 5, 7 and 8, above set forth. It appears that the corporation, May 14, 1901, mortgaged certain real estate situate in Central Falls to the Slater Trust Company, of Pawtucket, to secure a note for $4,000, due one year after date, with interest at six per cent. It further appears that this mortgage was never paid by the corporation, but was allowed to remain upon the property until after the failure in May, 1907, and that thereafter on July 3, 1907, the property was sold under the power of sale in the mortgage; and the defendant offered to prove that at said sale the property was sold for the sum of $3,610. Defendant also offered to prove that at the time of the execution of the mortgage in 1901, and during certain other years thereafter the corporation was solvent, having assets in excess of its liabilities to such an extent that this note of $4,000 secured by mortgage, did not impair the fund created by the paid-in capital stock, but should be regarded as secured upon surplus assets and therefore payable out of surplus assets; and the defendant's counsel therefore claimed in the first place that this note of $4,000 should not be

reckoned as a part of the total indebtedness; and further claimed that by the sale of the property under the mortgage for the sum of $3,610, after bankruptcy had taken place, the total indebtedness of the corporation above set forth was thereby reduced below the amount of the paid-in capital stock, and the defendant was thereby exonerated from further liability.

We find it difficult to state these propositions in such a way as to present matter for argument, albeit defendant's counsel in their brief have argued at length in support of them. It seems to us that the evidence offered in this line and ruled out by the Superior Court was entirely irrelevant and immaterial. The note for $4,000 secured by mortgage was as much a debt owed by the company as any other debt; the fact that the company was perfectly solvent when the note was made, and that it had then and later sufficient assets over and above the real estate mortgaged, so that its capital stock fund was not impaired, and so that it could then have paid this note out of surplus assets, had it seen fit to do so, is immaterial in view of the fact that it never did, as a matter of fact pay this mortgage note out of surplus assets, so that six years later, when the company failed, its debts, including this same $4,000 had been increased as above shown in excess of its paid-in capital. After the most careful consideration of the defendant's arguments we can find no ground either in reason or authority for holding that this mortgage note of $4,000 should not be included in the sum of the debts owed by the company in showing an excess of debts owed over paid-in capital; it has been expressly held to the contrary. The principle involved is well stated by the Supreme Court of Tennessee in the case of *Tradesman Pub. Co. v. Car Wheel Co.*, 95 Tenn. 634, which holds that the term "indebtedness" as used in the charter of a company providing that, if the indebtedness of such company shall at any time exceed the capital stock paid in, the directors assenting thereto shall be individually liable to the creditors for said excess, includes all indebtedness of the

corporation, thus including bonded indebtedness as well as floating indebtedness. The court said p. 657: "The next question presented is whether the word indebtedness in the clause of the charter imposing personal liability on the directors assenting to an indebtedness in excess of the capital stock paid, includes bonded indebtedness. The Chancellor so held. The contention of the director's counsel is that the term means the floating indebtedness, and does not embrace the bonded debt. . . . The construction contended for by counsel for the directors would lead to this anomaly, that directors, having contracted indebtedness to the limit allowed by the charter, may fund this liability in bonds, secure them by a recorded mortgage, and then, without risk to themselves, incur additional indebtedness, and repeat the process *toties quoties*. . . . We think this section of the charter of the car wheel company is unambiguous, and the term indebtedness clearly includes the bonded debt." See, also, *Morgan* v. *Hedstrom*, 164 N. Y. 224, 229.

(6)    Nor can we find either in reason or authority any support for the defendant's claim that the amount of $3,610 for which said real estate was sold under the mortgage after bankruptcy should be applied by way of reduction of the "amount of debts owed" by the corporation. At the time of this sale, there were no surplus assets of the corporation; it was insolvent and its entire property in liquidation by the trustee in bankruptcy paid only $35\frac{1}{10}$ per cent. upon the total debts. The foreclosure of this mortgage by the Slater Trust Company was but a step in the liquidation of the property in bankruptcy, in order to apply its mortgaged land to the debt due to the Slater Trust Company and to ascertain what if any balance of the $4,000 note remained to be included within the claims upon which the trustee in bankruptcy was to pay dividends. It turned out that a balance of $390 remained to be so included on behalf of the Slater Trust Company. So that it clearly appears that this sum of $3,610 was not paid out of surplus assets, for there

were no such surplus assets; and there is nothing in the decision of the case of *J. L. Mott Iron Works* v. *Arnold*, 35 R. I. 456, which in any way supports the position here attempted to be taken by the defendant. On the contrary, we think the amount of $3,610 realized on the foreclosure sale of the mortgage, stands in principle upon the same footing as the payments made by the trustee in bankruptcy in the liquidation of the bankrupt estate and is no more to be credited for the use of the defendant in this case, than were the dividends in bankruptcy in the *Mott* case, *supra*.

Many cases have been cited upon the elaborate brief filed on behalf of the defendant, all of which have been carefully considered. We have not found it necessary to cite or review any of them other than such as are mentioned herein; in none of them do we find any support for the defence in this case.

On the consideration of the whole record we find no error on the part of the trial judge in the matter of any of the exceptions above set forth. We are of the opinion that the plaintiff made out a case for recovery and that no defence attempted on behalf of the defendant was of any force or validity. The trial judge was therefore justified in directing a verdict for the plaintiff.

The defendant's exceptions are all overruled and the case is remitted to the Superior Court with direction to enter judgment for the plaintiff upon the verdict.

*Murdock & Tillinghast*, for plaintiff.

*William A. Spicer, Jr., Frank H. Swan, Edwards & Angell*, for defendant.