## STANDARD OIL CO. v. WRIGHT OIL SERVICE CO.

Circuit Court of Appeals, Fourth Circuit.
June 12, 1928.

No. 2703.

1. Sales ⊷77(1)—Words "seller's 'tank wagon price' * * * in effect at H." meant price actually charged at H. for gasoline, not price fixed at seller's New York office.

In contract for sale of gasoline at "seller's 'tank wagon price' * * * in effect at H.," quoted words did not refer to price fixed and promulgated from seller's New York office, but meant price at which sales were actually made from seller's tank wagons in H.

2. Customs and usages ⊷17—Where words in sales contract, "seller's tank wagon price," were unambiguous, they could not be varied by evidence of custom.

Where words "seller's tank wagon price * * * in effect at H.," in contract for sale of gasoline, were clear and unambiguous, they could not be varied or contradicted by evidence that under custom of trade words "seller's tank wagon price" had reference to tank wagon price as fixed from seller's New York office.

3. Customs and usages ⊷15(1), 17—Usage may be resorted to, to make definite what is uncertain, but not to vary or contradict terms of contract.

Usage may be resorted to, in order to make definite what is uncertain, clear up what is

doubtful, or annex incidents, but not to vary or contradict terms of contract.

In Error to the District Court of the United States for the Southern District of West Virginia, at Huntington; George W. McClintic, Judge.

Action by the Standard Oil Company of New Jersey against the Wright Oil Service Company, in which defendant filed a counterclaim. Judgment for defendant, and plaintiff brings error. Affirmed.

Douglas W. Brown, of Huntington, W. Va., and Rowland K. Adams, of Baltimore, Md. (Fitzpatrick, Brown & Davis, of Huntington, W. Va., on the brief), for plaintiff in error.

George S. Wallace and L. L. Wilson, both of Huntington, W. Va., for defendant in error.

Before WADDILL, PARKER, and NORTHCOTT, Circuit Judges.

PARKER, Circuit Judge. Plaintiff in error, the Standard Oil Company of New Jersey, was plaintiff in the court below, and the Wright Oil Service Company, a corporation of Huntington, W. Va., was defendant. The action was instituted to recover on a contract for gasoline sold and delivered to defendant. There was no controversy as to any of the items embraced in the declaration, but defendant pleaded as a counterclaim that in violation of the contract plaintiff had collected from defendant a sum equal to the amount sued for in excess of the amount which it was entitled to receive thereunder. The case was heard before a jury, and there was a verdict for defendant. The only question presented here is whether the trial judge should have directed a verdict for plaintiff; and this question resolves itself into whether, viewed in the light most favorable to defendant, there was any substantial evidence to support the counterclaim asserted. We think that there was.

Defendant was engaged in the sale of oil and gasoline in Huntington, W. Va., and had been so engaged for a number of years prior to 1925. It not only operated a number of service stations on its own account, but also sold gasoline from tank wagons to such stations operated by others, and in this way handled gasoline in large quantities. It purchased from plaintiff in tank car quantities the gasoline which it sold, and, because of the large quantity purchased, because deliveries were made in tank cars, and because defendant made sales to service stations from its tank wagons, just as plaintiff did, and

was thought to be entitled to a price which would enable it to realize a profit on such sales, the price charged defendant was uniformly 3 cents per gallon less than the price at which plaintiff sold the same quality of gasoline from its tank wagons.

On November 18, 1925, defendant entered into a contract with plaintiff to purchase 1,000,000 gallons of gasoline during the year 1926. This contract, which was in writing, contained the following provisions as to price:

"For the gasoline delivered hereunder, the purchaser shall pay to the seller *the seller's tank wagon price* (exclusive of tax) for 'Standard' gasoline *in effect at Huntington, W. Va.,* on the date of each shipment, *less three cents per gallon.* If, at any ime during the terms of this contract, the seller's tank wagon price (exclusive of tax) for 'Standard' gasoline in effect at Huntington, W. Va., is less than 15 cents per gallon, the seller shall have the option, to be exercised by giving the purchaser three (3) days' notice in writing or by telegraph, to suspend deliveries hereunder until such time as the tank wagon price is again 15 cents or more per gallon, unless the purchaser shall agree to pay for deliveries to be made hereunder such price as the seller shall from time to time designate." (Italics ours.)

At the time of the execution of the contract no question had arisen or could have arisen as to the meaning of the words "seller's tank wagon price * * * in effect at Huntington, W. Va.," as used in the contract; for plaintiff had only one tank wagon price at Huntington, which was the price at which sales were made from its tank wagons. Discounts were not given to customers purchasing from tank wagons, and there was no occasion to make any distinction between the tank wagon price as sent out from the headquarters of plaintiff company and the price actually charged in sales from tank wagons. In the latter part of the year 1925 and during the early part of the year 1926, however, a gasoline price war occurred in Huntington, and plaintiff began giving discounts to its tank wagon customers who would purchase large quantities of gasoline. While charging one tank wagon price to its customers who purchased small quantities, it allowed discounts therefrom of 1 cent, 1½ cents, or 1¾ cents per gallon to customers who purchased large quantities, thereby giving the latter a tank wagon price lower by the amount of the discount allowed. Plaintiff did not notify defendant of these discounts, but charged it for gasoline purchased under the contract at

3 cents per gallon less than the price charged the customers who purchased only in small quantities. Upon discovering the lower price which had been charged to the larger customers, defendant protested against the price which it had been charged, and further payments were made under assurances from plaintiff's representative that the matter was being taken up with the New York office, with a view of having it adjusted.

The evidence of sales made by plaintiff from tank wagons at Huntington during the period in question shows that the greater number of customers were charged what plaintiff contends was its tank wagon price, but that by far the greater quantity of gasoline sold from its tank wagons was sold at lower prices under the guise of discounts. Thus, in January, 1926, 28,000 gallons (in round figures), of a total of 45,000 gallons sold from tank wagons, was sold at lower prices; in February, 31,000 gallons, of a total of 41,000; in March, 50,000, of a total of 62,000; in April, 60,000, of a total of 78,000; in May, 73,000, of a total of 96,000; and in June, 70,000, of a total of 95,000. No trade journal published any tank wagon price as prevailing at Huntington; and although there is evidence that a tank wagon price was promulgated from plaintiff's New York office applicable to the territory in which Huntington was situate, and that trade publications carried the tank wagon price at certain other cities in West Virginia, the evidence is that after the price war began at Huntington this tank wagon price was not applied in sales actually made there to tank wagon customers purchasing gasoline in large quantities, who, of course, were the most desirable tank wagon customers.

[1] The case before us turns upon the meaning of the words "seller's tank wagon price * * * in effect at Huntington." If these words refer to the price fixed and promulgated from plaintiff's New York office, without reference to prices actually charged at Huntington, a verdict should have been directed for plaintiff; for there is no question that the gasoline purchased by defendant was billed to it at 3 cents per gallon less than this price. If, however, they refer to the price actually in effect in sales made at Huntington, the motion for directed verdict was properly denied, and the case was properly left to the jury to determine what the price in effect actually was. We think that the latter is the correct interpretation. The words used are nontechnical words, and are to be taken in their plain, ordinary and popular sense. 6 R. C. L. 843. When so taken, there

26 F.(2d)—57

can be no doubt as to their meaning; for they manifestly mean the price at which sales are actually made from plaintiff's tank wagons in Huntington.

And we think that this common-sense interpretation is supported by a consideration of the circumstances surrounding the making of the contract. Plaintiff not only operated service and filling stations itself, but also made sales of gasoline to others engaged in that business. The reduction of 3 cents below tank wagon prices was evidently allowed, not only because of the convenience to plaintiff in selling in tank car lots, but also to allow defendant such a margin under the tank wagon price as would justify it in purchasing in large quantities and selling to smaller users. This object would be entirely frustrated if the prices actually charged in sales from tank wagons should be reduced, without a corresponding reduction in the prices charged defendant. The unsoundness of the contention that the words should be held to refer to prices promulgated from the New York office, without reference to actual reductions in prices given by means of discounts, is apparent, if we follow that contention to its logical conclusion. If it be sound, defendant could have been held to its contract to purchase 1,000,000 gallons of gasoline at 3 cents under tank wagon prices as quoted, even though plaintiff might have given a discount of 5 cents, instead of 1½ cents, per gallon to its tank wagon customers, and might have given it to all of its customers, instead of merely to those whose trade was valuable because of the large quantities purchased by them. Of course, the parties contemplated no such meaning for the language which they used, but intended that defendant should have gasoline at 3 cents less than the price it was actually selling for from tank wagons, and, to protect itself against too low a price, inserted the option to suspend deliveries if the tank wagon price should fall below 15 cents.

[2, 3] Plaintiff offered evidence to the effect that under the custom of the trade the words "seller's tank wagon price," as used in the contract, had reference to the tank wagon price as fixed and promulgated from its New York office. But there are two reasons why it was not entitled to a directed verdict on this evidence. In the first place, in view of the evidence that for several years prior to the making of the contract the tank wagon price as promulgated from the New York office was the price actually in effect without discount in sales from tank wagons in Huntington, the words could not have acquired

such a significance that, in the case of a variance between the price as promulgated and the price in effect, they could be said to have reference to the former. In the second place, where the words of a contract are clear and unambiguous, as they are here, they cannot be varied or contradicted by evidence of custom or usage.

To give to the words "seller's tank wagon price" the interpretation for which plaintiff contends would be to contradict other words of the contract equally as important; for "seller's tank wagon price" is expressly limited by the words "in effect in Huntington." This cannot be done. Usage may be resorted to, "in order to make definite what is uncertain, clear up what is doubtful, or annex incidents, but not to vary or contradict the terms of a contract." Moore v. U. S., 196 U. S. 157, 166, 25 S. Ct. 202, 204 (49 L. Ed. 428) ; The Gazelle, 128 U. S. 474, 486, 9 S. Ct. 139, 32 L. Ed. 496; Barnard v. Kellogg, 10 Wall. 383, 394, 19 L. Ed. 987; 17 C. J. 508.

There was no error, and the judgment in favor of defendant is accordingly affirmed.

Affirmed.