## SINCLAIR REFINING CO. v. MIDLAND OIL CO.
### No. 3227.

Circuit Court of Appeals, Fourth Circuit.
Jan. 12, 1932.

H. P. Ragland, of Atlanta, Ga. and W. H. Childs, of Lincolnton, N. C. (C. E. Childs, of Lincolnton, N. C., on the brief), for appellant.

Charles R. Jonas, of Lincolnton, N. C. (Ryburn & Hoey, of Shelby, N. C., and Jonas & Jonas, of Lincolnton, N. C., on the brief), for appellee.

Before PARKER and SOPER, Circuit Judges, and CHESNUT, District Judge.

CHESNUT, District Judge.

This case presents an appeal from a preliminary injunction restraining the Sinclair Refining Company as the holder of certain bonds secured by deed of trust on the property of the Midland Oil Company, from taking steps to procure a foreclosure sale under the deed of trust. The contentions urged for a reversal of the order and dissolution of the injunction are (a) that the court was without jurisdiction to pass the order by reason of a defect of parties, in that the trustee was not a party to the case; and (b) that the bill of complaint did not state a case sufficient in equity for the relief prayed.

It appears that the Sinclair Refining Company is a Maine corporation engaged in the refining and wholesale marketing of gasoline and other petroleum products; and the Midland Oil Company is a North Carolina corporation engaged in the retail sale and distribution in the state of North Carolina in and adjacent to Lincolnton of the same products. On April 8, 1927, the parties made a sales contract effective for one year from July 1, 1927, covering the sale and delivery of maximum and minimum quanti-

ties of gasoline and kerosene. The contract was to continue from year to year until canceled by either party at the end of any year upon ninety days' prior notice. After the parties had been operating under the contract for about two years, the Sinclair Refining Company, according to the allegations of the bill of complaint, persuaded the Midland Oil Company, which operated numerous filling stations in North Carolina, to extend the volume of its business by making substantial additions to its equipment, and advanced to the Midland Oil Company for that purpose $28,159.86 the repayment of which was secured by a deed of trust dated June 4, 1929, from the Midland Oil Company to the two named trustees (W. H. Childs now being the sole substituted trustee), covering various parcels of lands and filling station equipment thereon in Lincoln and Catawba counties, N. C., as well as certain personal property described in the deed of trust, by the provisions of which the total indebtedness was to be repaid in 35 monthly installments of $800 each, and the balance in the succeeding month, with interest at 6 per cent. The payments under the sales contract and the monthly payments of sums due under the deed of trust were continued by the parties until shortly before the filing of the bill of complaint on July 2, 1931. At that time the balance remaining due under the deed of trust was $8,-959.86, and it is alleged that most of this balance had been accelerated as to maturity by the action of the Sinclair Refining Company which was threatening foreclosure proceedings to collect the balance due.

■ We will first consider the objection to the preliminary injunction on the ground that the substituted trustee under the deed of trust was an indispensable party. The trustee was not named as a party in the caption or body of the bill but one of the prayers of the bill requested that a restraining order against the sale should be served upon the trustee, and the court, by a restraining order, did so order. But later, and before the issuance of the preliminary injunction, which was issued only after notice and appearance of counsel for the defendant, the restraining order as to the substituted trustee was rescinded on the ground that service of the order had never been made upon him and on the further ground that he was not a party to the case.

Reference to the terms of the deed of trust shows that it is in conventional form. Such instruments, as in this case, take the form of a conveyance from the debtor to the trustee covering the property which is to be security for the indebtedness, and the trustee, upon default in payment of the indebtedness as it matures, or in performance of other covenants of the instrument, is authorized to sell the property and apply the net proceeds of sale to the satisfaction of the indebtedness. In this particular instrument the provision as to sale is that upon default the trustee *may* proceed to sale. It was also provided that the Sinclair Refining Company, which was named as the creditor and the holder of the bonds evidencing the indebtedness, might from time to time appoint substituted trustees in the place of those originally named. It is well known that in practice the activities of the trustee under such instruments with respect to sales or other action to be taken thereunder are seldom, if ever, initiated by the trustee but usually begin only upon the request of the creditor. Although the bill alleges that the Sinclair Refining Company is threatening foreclosure, it does not appear that the trustee has in fact taken any steps to foreclose.

Under these conditions, in our opinion, the trustee is not an indispensable party. See Halpin v. Savannah R. Elec. Co., 41 F. (2d) 329 (C. C. A. 4th). He would, of course, have been a proper party but was doubtless not made a party by the complainant because, being a citizen of North Carolina, his presence in the case would have destroyed the necessary diversity of citizenship to confer jurisdiction upon the court. General Equity Rule No. 39 (28 USCA § 723) provides: "In all cases where it shall appear to the court that persons, who might otherwise be deemed proper parties to the suit, cannot be made parties by reason of their being out of the jurisdiction of the court, or incapable otherwise of being made parties, or because their joinder would oust the jurisdiction of the court as to the parties before the court, the court may, in its discretion, proceed in the cause without making such persons parties; and in such cases the decree shall be without prejudice to the rights of the absent parties."

■ As the trustee is not a party, and as the injunction in this case does not undertake to restrain his activities, it is, of course, entirely clear that he is not subject to the operative effect of the order and is at liberty to take action in this case on his own initiative for the sale of this property if he conceives it to be his duty to do so without the request of the Sinclair Refining Company. But we cannot say, because the complainant cannot secure full and certain protection against the activities of the trustee, that it is

not entitled to what protection it can receive by restricting the initiative of the Sinclair Refining Company. If the complainant is satisfied to accept the limited relief permissible in this case, we see no good reason for denying that much aid to it. We are therefore of the opinion that the authorities cited by the appellant to the effect that it is the citizenship of the trustee and not of the cestui que trust that determines the diversity of citizenship, and that the foreclosure sale under a deed of trust will not be enjoined without making the trustee a party to the case, are inapplicable as authorities against the limited scope of this injunction order.

The other objection relied on by the complainant is of substantial rather than procedural importance. It is contended that the bill as a whole does not set up any equitable ground justifying restraining the Sinclair Refining Company from proceeding to foreclose. This requires a somewhat fuller analysis of the bill of complaint.

In addition to the facts already stated, the bill alleges that in the course of the performance of the sales contract the Sinclair Company, during the period from December, 1929, to the time of the filing of the bill of complaint, had made various "overcharges" to the Midland Oil Company for deliveries of gasoline and kerosene, which had been paid by the purchaser under protest, to the aggregate amount of $10,166.79; and also alleges that the Sinclair Refining Company had damaged the plaintiff's business to the amount of $10,000 by giving publicity to threats of foreclosure. The prayers of the bill were, first, for a judgment against the Sinclair Company in the amount of the "overcharges," and, second, for the recovery of the sum of $10,000 for damages to the complainant's business, and, third, for a restraining order against the foreclosure sale, "until a hearing of this cause." While the bill of complaint does not expressly pray for a set-off of the "overcharges" and damages against the indebtedness admitted to be due under the deed of trust, yet that was probably its intended purport. The bill also alleges that during negotiations between the parties for the purchase of the property of the Midland Oil Company covered by the deed of trust by the Sinclair Company which had taken an option thereon for $58,000, the Midland Company had allowed some of the payments currently accruing under the deed of trust to become overdue, and the Sinclair Company, in an effort to force the Midland Company to sell its property at less than a fair sum, had offered $50,000 for the property, and upon its refusal had arbitrarily and oppressively demanded full payment by the Midland Company of taxes due upon the property and all accrued installments of the debt, and was threatening, upon default, to sell the property under the deed of trust, which would result in a sale at a sacrifice price in a time of general economic depression. The injunction appealed from was granted by the District Judge on the basis of the allegations of the bill before answer.

In considering whether the granting of this preliminary injunction should be disturbed on this appeal, it is to be borne in mind that the granting of a temporary restraining order or preliminary injunction is within the sound judicial discretion of the court, and the action of the trial court will not be disturbed unless there has been a clear abuse of discretion. The granting of the temporary injunction does not determine the rights of the parties. In the exercise of its discretion it is sufficient if the court is satisfied that there is a probable right and a probable danger and that the right may be defeated, unless the injunction is issued, and considerable weight is given to the need of protection to the plaintiff as contrasted with the probable injury to the defendant; and the test on appeal is not whether the appellate court would have granted or denied the injunction, but whether the record shows an abuse of authority by the trial judge. Meccano v. Wanamaker, 253 U. S. 136, 141, 40 S. Ct. 463, 64 L. Ed. 822; U. S. Gramophone Co. v. Seaman (C. C. A. 4th) 113 F. 745; Ritter v. Ulman (C. C. A. 4th) 78 F. 222; El Dorado & W. Ry. Co. v. Chicago, R. I. & P. Co. (C. C. A. 8th) 5 F.(2d) 777; Colo. Eastern Ry. Co. v. Chicago, B. & Q. Ry. Co. (C. C. A. 8th) 141 F. 898; Societe Anonyme du Filtre Chamberland Systeme Pasteur v. Allen, 90 F. 815 (C. C. A. 6th). The purpose of the preliminary injunction is to preserve the status quo until the rights of the parties can be fairly and fully investigated and determined by strictly legal proofs and according to the principles of equity. Blount v. Societe (C. C. A. 6th) 53 F. 98; Kings County Raisin Co. v. U. S. Consol. Raisin Co. (C. C. A. 9th) 182 F. 59.

Applying these principles to the instant case, we do not feel required to disturb the exercise of discretion by the District Court. But it does not follow that the plaintiff will be entitled to an indefinite continuance of this preliminary injunction or to a permanent injunction merely upon proof of

the allegations of the bill as now drawn. In our opinion, as hereinafter more fully stated, the injunction should not be continued, unless the plaintiff establishes some definite interrelation of the alleged "overcharges" under the sales contract and the indebtedness admitted to be due under the deed of trust. The substance of the plaintiff's bill, as we analyze it, is an attempt to set off these alleged "overcharges" against the indebtedness under the deed of trust. But the relation of the one to the other is certainly not clearly shown by the bill as now drawn. There is in the bill perhaps an implication of an agreement between the parties that the plaintiff's profits from the sales contract were to be looked to for the gradual liquidation of the mortgage indebtedness, and that the defendant's conduct in negotiating for the purchase of the plaintiff's property constitutes some estoppel or breach of good faith against its alleged sudden demand for immediate payment under threat of foreclosure sale. But in our opinion the suggested implication is not sufficiently alleged in the bill to warrant the continuance of the injunction, unless further proof give more definiteness to the plaintiff's possible case in this respect. If it should be ultimately found that there was an express or implied agreement between the parties that the mortgage indebtedness was to be gradually liquidated from the profits of the sales contract, or if the overcharges alleged to have been made by the defendant are established by the proof under circumstances which would justify their set-off against the mortgage debt, there would be such a relation and mutuality between the two claims that the court would be justified on equitable principles in restraining the foreclosure sale at least until the definite establishment of the balance due under the mortgage over and above all credits. If, however, there is no such relation found to exist between the respective claims, then the case will have to be considered from the aspect merely of the plaintiff's attempt to set off in equity the alleged "overcharges" under the contract against the separate and independent and admitted amount due to the defendant. A general statement of applicable equitable rules can be found in 19 R. C. L., subject "Mortgages," pp. 617, 618, § 434, as follows: "The sale under the power in the mortgage is a remedy at law, and an injunction for the purpose of interposing a set-off will not be granted in the absence of statute except on special equitable grounds. So equity will not enjoin the execution of a power of sale until an unliquidated demand due from the defendant to the complainant can be ascertained and set off, in the absence of an allegation of the defendant's insolvency or other special equity." See, also, to the same effect 41 C. J. p. 930, § 1353, and page 933, § 1356, subheading "Set-off."

With regard to the plaintiff's claim for $10,000 damage to its business, we are clearly of the opinion that there are no facts or considerations alleged in the bill which would warrant an equity court in determining the amount, if any, recoverable by the plaintiff for this item. It is in the nature of a claim for unliquidated damages in tort, and furnishes no proper basis for a set-off in equity against the admitted and liquidated amount due under the deed of trust. See Lawrence on Equity Jurisprudence, vol. 2, § 1075; Fell v. Pitts, 263 Pa. 314, 106 A. 574; Cotton v. Scott, 97 Ala. 447, 12 So. 65; 34 Cyc. 702. The alleged "overcharges" under the sales contract are stated in the plaintiff's bill in liquidated form, but a close analysis of the allegations of the bill with respect to these "overcharges" throws grave doubt on the question whether they constitute a really liquidated demand. The substance of the allegations of the bill in this respect is that the sales contract provided for a profit to the plaintiff of 4 cents a gallon on gasoline, but the Sinclair Company required the plaintiff to pay a price which permitted the complainant to make a smaller profit only. It does not appear in the bill why the plaintiff yielded to the seller's demand for more than the price fixed by the contract and continued to pay the higher prices for more than a year, although under protest. In our opinion, the plaintiff's case, if any in this respect, is only vaguely stated in the bill of complaint, but it is possible that the proof may show that the "overcharges" were made under circumstances constituting legal duress. Compare Standard Oil Co. v. Wright Oil Service Co., 26 F. (2d) 895 (C. C. A. 4th.)

If it is finally determined that there is no interrelation of the sales contract to the deed of trust, and especially, if the alleged "overcharges" set up as a set-off are shown to be unliquidated, there would seem to be no sufficient equity in the bill to continue the injunction against the foreclosure sale, as there is no allegation of the insolvency of the defendant, or that it is not subject to independent suit in North Carolina. The leading case in federal equity upon this subject is North Chicago Rolling-Mill Co. v. St. Louis

Ore & Steel Co., 152 U. S. 596, at page 615, 14 S. Ct. 710, 715, 38 L. Ed. 565, where it is said:

"Cross demands and counterclaims, whether arising out of the same or wholly disconnected transactions, and whether liquidated or unliquidated, may be enforced, by way of set-off, whenever the circumstances are such as to warrant the interference of equity to prevent wrong and injustice. * * * The adjustment of demands by counter-claim or set-off, rather than independent suit, is favored and encouraged by the law, to avoid circuity of action and injustice. [Florida] Railway Co. v. Smith, 21 Wall. 255 [22 L. Ed. 513].

"By the decided weight of authority, it is settled that the insolvency of the party against whom the set-off is claimed is a sufficient ground for equitable interference."

But unless there is some equity, such as insolvency or nonresidence, federal equity does not generally allow a set-off arising from an unrelated transaction. In Maryland Casualty Co. v. Board of Education, 20 F.(2d) 799, 801, the Circuit Court of Appeals for the Third Circuit by Judge Woolley, said in such a case: "We shall, therefore, rest our decision on other grounds, and on federal authorities. These clearly show that a party to a suit in equity may not of right assert the defense of set-off—a defense peculiarly one of law. They indicate * * * that courts of equity permit the set-off of a counterclaim, whether liquidated or unliquidated, 'when the particular circumstances have been such as to raise an equity in support of the claim.' It is therefore some circumstance relating to the claim rather than the claim itself that will induce a court of equity to allow the defense. The circumstance most frequently availed of and the one found in each of the following cited cases is insolvency of the party asserting the major claim. North Chicago Rolling-Mill Co. v. St. Louis Ore & Steel Co., 152 U. S. 596, 615, 622, 14 S. Ct. 710, 38 L. Ed. 565; Carr v. Hamilton, 129 U. S. 252, 9 S. Ct. 295, 32 L. Ed. 669; Central Appalachain Co. v. Buchanan, (C. C. A. 6th) 90 F. 454, 459, 462."

In the absence of insolvency or some other special ground for equitable relief, the general rule is that unliquidated legal damages cannot be set off either at law or in equity, in the absence of statute. Norwood Paper Co. v. Columbia Paper Bag Co. (C. C. A. 4th) 185 F. 454, 456; 34 Cyc. 702. Rule 30 of the General Equity Rules (28 USCA § 723) provides, in part, as follows: "The answer must state in short and simple form any counterclaim arising out of the transaction which is the subject-matter of the suit, and may, without cross-bill, set up any set-off or counterclaim against the plaintiff which might be the subject of an independent suit in equity against him, and such set-off or counterclaim, so set up, shall have the same effect as a cross-suit, so as to enable the court to pronounce a final decree in the same suit on both the original and the cross-claims."

As construed by the Supreme Court, the rule applies to equitable and not legal counterclaims. The latter are excluded by reason of the Seventh Amendment relating to a jury trial. American Mills Co. v. American Surety Co., 260 U. S. 360, 43 S. Ct. 149, 67 L. Ed. 306; Moore v. N. Y. Cotton Exchange, 270 U. S. 593, 46 S. Ct. 367, 70 L. Ed. 750, 45 A. L. R. 1370. In Brewster-Greene v. Scott (C. C. A. 9th) 41 F.(2d) 165, 166, in an equity suit foreclosing a purchase money mortgage on real property where the defendant set up a counterclaim for breach of warranty in the deed, in applying rule 30, it was said: "Conceding, for present purposes, that they [the counterclaims] stated a cause of action in favor of the appellants, the remedy was at law, and such counterclaims are not available in a federal court of equity."

If a legal counterclaim may not against objection be validly set up in the answer as a defense to plaintiff's bill of complaint in equity, it would seem that it cannot, against defendant's objection, be made the basis of affirmative relief in a bill of complaint.

Whether these principles will be applicable and controlling in final disposition of this case must await further developments of pleading and proof. On the present appeal, we determine only that the issuance of the preliminary injunction by the District Court on the allegations of the bill alone and without the benefit of defendant's answer do not constitute an abuse of discretion requiring reversal; and for this reason the order appealed from will be affirmed.