## Smith, Appellant, *v.* Brown-Borhek Company.

326

Argued January 14, 1964.   Before BELL, C. J.,
MUSMANNO, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Harry A. Dower,* with him *Dower, Kanehann, Huston, McDonald & Cahn,* for appellant.

*H. P. McFadden,* with him *McFadden, Riskin & Williams,* for individual appellees.

*William B. Joachim, Jr.,* and *Butterfield, Joachim & Brodt,* for corporate appellee.

OPINION BY MR. CHIEF JUSTICE BELL, April 21, 1964:

Plaintiff owns 516 out of a total of 8,000 shares of stock (outstanding) in the Brown-Borhek Company. He brought this stockholder's derivative suit on October 23, 1962, to recover for the corporation $605,507, the amount of the loss allegedly resulting from negligent mismanagement by the individual defendants, who are, or were at the relevant times, officers and directors. The defendants filed an answer denying plaintiff's material allegations and set up new matter alleging ratification of the acts in issue. Plaintiff filed a reply to the new matter in which he admitted that the stockholders ratified defendants' challenged actions, but denied the legal effect of this ratification and the legality of many of the votes which were cast for ratification. The Court of Common Pleas granted defend-

ants' motion for judgment on the pleadings and this appeal followed.

The transactions complained of are a series of sales on credit by Brown-Borhek Company to a large customer, Raydel Homes Corp., throughout 1960 and 1961, and an eventual compromise of the latter's indebtedness in 1962. In 1960 Brown-Borhek's sales to Raydel totaled $550,562, or 37% of all sales. On December 31, 1960, Brown-Borhek carried an account receivable from Raydel of $262,010, which amounted to 60% of Brown-Borhek's receivables and 29% of all its assets. In 1961, Brown-Borhek's sales to Raydel amounted to approximately $1,050,290, 50% of all sales. On December 31, 1961, Raydel's account receivable with Brown-Borhek was $653,994;* this represented 80% of its receivables and 63% of all its assets.**

Raydel's indebtedness of $605,507 owing to Brown-Borhek as of November 30, 1961, was compromised on February 7, 1962, by an agreement under which Brown-Borhek received $363,300 worth of Raydel 5% non-cumulative preferred stock with a par value of $10 a share and a promissory note for $242,207 with interest at 6%, payable December 31, 1962. In defendants' new matter, they aver that this transaction was *part* of a composition by Raydel with its major creditors and that in addition Raydel made a cash payment to Brown-Borhek of $50,000. This cash payment was admitted by plaintiff in his reply. Brown-Borhek's President stated at the annual stockholders' meeting that Raydel is presently in bankruptcy, and that nothing of value has been realized as yet from the preferred stock or from the promissory note.

---

* Defendants aver this figure was $685,069.

** Defendants allege that this percentage was reduced to 45% when adjusted by the accountant with the reserve for uncollectible accounts receivable.

*Plaintiff does not aver fraud nor personal profit* by the defendants but alleges that the above transactions occurred *when* the individual defendants knew or should have known (a) that Raydel's liabilities greatly exceeded its assets and (b) that it was unable to meet its current obligations, and (c) that defendants had no reasonable expectation that the indebtedness would be paid. Furthermore, plaintiff alleges that the Raydel stock and promissory note were worthless at the time of receipt. All of these allegations were specifically or substantially denied by defendants, who suffered far greater financial losses from this Raydel account than did the plaintiff. Both sides agree that the defendants set credit limits on sales to Raydel which they subsequently did not adhere to, and that Raydel's receivables were carried on the average for a longer period than those of other customers.* Finally, plaintiff alleges that during the last half of 1961 the President of Brown-Borhek spent his full time campaigning for the office of Mayor of Bethlehem and that its Vice President was similarly engaged in the management of the United Gas Improvement Company. Defendants aver that these outside activities did not prevent these officers from attending to their respective duties and particularly to this Raydel account and furthermore that the vice presidency had always been only a part time job. Defendants admitted that the directors failed to remove these officers, but denied that this failure was due to negligence on their part.

Defendants, in addition to a denial of plaintiff's importantly relevant material averments, set up new matter, viz., ratification by the stockholders of Brown-Borhek at their annual meeting on April 10, 1963.

---

* The parties differ on the exact period for carrying receivables.

This ratification was made by and pursuant to the following resolution:

"WHEREAS, in accordance with the notice of this meeting the chairman has reveiwed the handling of the Raydel account and the questions concerning it raised in a suit by Leland E. Smith, Now THEREFORE

"BE IT RESOLVED that the actions of the officers and directors in connection with the Raydel account be and hereby are ratified and confirmed and made the actions of this Corporation."

This resolution was carried by a vote of 6,693 to 405. Plaintiff's shares were not voted, but counsel for plaintiff was present at this stockholders' meeting.

The lower Court gave judgment for the defendants on the basis of this ratification. Plaintiff contends (1) that the aforesaid transactions could not be ratified under the law and (2) that even if ratification were permitted by law, (a) the transactions could not be ratified by less than all of the Brown-Borhek stockholders and (b) that the vote itself was legally defective because defendants voted their own shares and the proxies of other stockholders in favor of the resolution. We find no merit in any of these contentions.

The rule regarding judgment on the pleadings is well settled.

In *Poole v. Great American Insurance Co.,* 407 Pa. 652, 182 A. 2d 509, the Court, quoting from *Ross v. Metropolitan Life Insurance Co.,* 403 Pa. 135, 169 A. 2d 74, said (pages 654-655) : " 'A motion for judgment on the pleadings, like preliminary objections, is the equivalent of the old statutory demurrer and admits all facts which are well pleaded [but not the pleader's conclusions or averments of law]. Necho Coal Co. v. Denise Coal Co., 387 Pa. 567, 128 A. 2d 771; Gardner v. Allegheny County, 382 Pa. 88, 114 A. 2d 491. Such a motion should be granted and judgment should be entered only in a case which is clear and free from

doubt [cases supra].' "   Also *Schrader v. Heath,* 408 Pa. 79, 83, 182 A. 2d 696; *Universal Film Exchanges, Inc. v. Board of Finance and Revenue,* 409 Pa. 180, 185 A. 2d 542.

In *Universal Film Exchanges,* supra, the Court, quoting from *Bogash v. Elkins,* 405 Pa. 437, 439, 176 A. 2d 677, accurately stated the applicable rule (page 188) : "Preliminary objections admit all facts which are well pleaded, but not the pleader's conclusions or averments of law: Ross v. Metropolitan Life Insurance Co., 403 Pa. 135, 169 A. 2d 74; Gardner v. Allegheny County, 382 Pa. 88, 114 A. 2d 491; Narehood v. Pearson, 374 Pa. 299, 96 A. 2d 895."

We must therefore assume that defendants were aware of Raydel's precarious financial condition and took a business risk which turned out disastrously for all the stockholders of Brown-Borhek Company.

### 1.   Could the Actions of Defendants Be Ratified?

In *Chambers v. Beaver-Advance Corp.,* 392 Pa. 481, 140 A. 2d 808, the Court said (page 486) : "The general rule is well established that stockholders can ratify any action of the board of directors [or officers] which they themselves could have lawfully authorized: Russell v. Patterson Co., 232 Pa. 113, 120, 81 A. 136; Lowman v. Pierce Co., 276 Pa. 382, 120 A. 404.   This general rule is 'subject, however, to the limitation . . . "the majority stockholder may not, as against the corporation and minority stockholder, dissipate or waste its funds, or fraudulently dispose of them in any way, either by ratifying the action of the board of directors in voting themselves illegal salaries, or by any other [similar] act." ' :   Lowman v. Pierce Co., 276 Pa. 382, 386."  Accord: *Reifsnyder v. Pittsburgh Outdoor Advertising Co.,* 396 Pa. 320, 152 A. 2d 894.

We repeat; nowhere in his complaint does the plaintiff allege that there has been fraud, self-dealing,

personal profit or intentional dissipation or waste of corporate funds. In the last analysis plaintiff bases his case on the alleged failure of the officers and directors to devote their full time to the management of the business and particularly to a prudent consideration of the Raydel account and failure to exercise "that diligence, care and skill which ordinarily prudent men would exercise under similar circumstances in their personal business affairs". This prudent man rule is the standard set forth in the Business Corporation Law of May 5, 1933, P. L. 364, §408, 15 P.S. §2852-408.

Plaintiff in his oral argument before this Court repeatedly emphasized that the alleged mismanagement by defendants consisted of *their negligent failure to exercise their duties,* and not of affirmative negligence or the deliberate exercise of bad judgment or intentional wrongdoing. We believe that plaintiff portrays defendants' alleged failure to act as he would have had them do, as a failure to exercise wise business judgment in the light of the disastrous business transaction from which they suffered far greater losses than he. The meaning and application of the "prudent man rule" (a) in the field of a testamentary or inter vivos trust, containing relatively few securities and (b) in the business or banking world are very different. For example, in the banking business bad loans or sour investments or unsuccessful business transactions are part and parcel of that business and are charged off every year, either voluntarily or on directions from the Pennsylvania Department of Banking or from the Comptroller of the Currency or the Federal Reserve Board or the Federal Deposit Insurance Corporation. In the business world of profit and loss, which is often popularly described as the profit system, it is too often forgotten that all businesses do not flourish, nearly every business has some losses and some bad accounts, and many insolvencies and bankruptcies frequently oc-

cur* even in these prosperous times. If the test of negligence which is applicable in the field of torts or in the estate field were similarly applicable in the business or banking field, it would *realistically* be very difficult if not almost impossible to secure the services of *able and experienced* corporate directors. Such persons would rarely ever accept a directorship if they could be held liable for every "bad" account or every mistake of judgment. From an early date this Court has consistently and realistically recognized the danger of subjecting corporate directors to liability whenever any of the transactions of the company did not meet with success. *Hunt v. Aufderheide,* 330 Pa. 362, 199 A. 345. Cf. also, *Swentzel v. Penn Bank,* 147 Pa. 140, 23 A. 405; *Spering's Appeal,* 71 Pa. 11; *Fell v. Pitts,* 263 Pa. 314, 319, 106 A. 574. Accord, *Otis & Co. v. P. R. R. Co.,* 61 F. Supp. 905, 910.

As Justice LINN pertinently observed in *Hunt v. Aufderheide,* supra, at pages 376-377: ". . . Most all business . . . involves speculative elements. The fiduciary character of the directors' relation to the corporation and the measure of their responsibility are quite different from those of a trustee under a will or a deed; such a trustee must preserve the principal for the benefit of remaindermen, and, at the same time, within the restricted field of investment . . ., obtain income for parties presently entitled. But the assets of a business corporation are held in lighter grasp; shares of stock are taken with notice that the assets shall be employed in making a profit, and that *it is customary to take business risks.*"

Furthermore, plaintiff's allegation of complete inactivity and inattention on the part of defendants is belied by his own pleadings. It is clear that defendants gave considerable effort to preserving Raydel as a func-

---

* Statistics show these are rapidly increasing.

tioning business enterprise, hopeful of its success. In extending credit and in further extensions of credit they had to balance (a) the outlet for their merchandise and (b) the opportunity for repayment in full, against (c) a very substantial reduction of their market and (d) a fractional payment of their claim out of insolvency or the wreck of bankruptcy. We make this observation not to condone or approve any of the defendants' acts but in support of a legitimate inference that they were indeed managing, as opposed to ignoring, the affairs of their corporation or the Raydel account.

Plaintiff-appellant further contends that these transactions could not legally be ratified, as in fact they were, after this suit challenging their legality had been commenced. We find no merit in this contention. In *Chambers v. Beaver-Advance Corporation,* 392 Pa. supra, we noted (in a footnote on page 490) that in *Hornsby v. Lohmeyer,* 364 Pa. 271, 72 A. 2d 294, a ratification after suit was brought was held effective.* In that case, the Court pertinently said (page 489): "Courts are reluctant to interfere in the internal management of a corporation, since *that is a matter for the discretion and judgment of the directors and stockholders, unless a minority stockholder's rights are jeopardized or injured by fraud or waste of company assets, or an overreaching, actual or legal* [citing numerous cases]." Prompt ratification after suit brought provides a salutary method for the resolving of differences within the corporation without the expense, delay and corporate paralysis that often result from a protracted derivative suit. Accord, Fletcher Cyclo-

---

* Although the time of ratification does not appear in the report in *Hornsby,* the printed record reveals (page 72a) that while suit was brought on July 30, 1948 ratification was effected by the Directors on December 14, 1948, and by the Stockholders on January 11, 1949.

pedia Corporations, Volume 2, Chapter 11, Section 766, pages 1113-1114; *Putnam v. Juvenile Shoe Corporation,* 307 Mo. 74, 269 S.W. 593, 40 A.L.R. 1412; *Kerbs v. California Eastern Airways, Inc.,* 33 Del. Ch. 69, 90 A. 2d 652.

In the *Kerbs* case, the Supreme Court of Delaware recently held that ratification, otherwise unobjectionable, is not invalid even *after trial* and while appeal is pending.

It is clear that defendants' aforesaid actions as directors and officers of Brown-Borhek Company could be legally ratified, even after suit had been brought.

### 2. Were the Challenged Actions of the Directors and Officers Legally Ratified?

Plaintiff attacks (a) the right of the directors to vote their own stock and (b) their right to vote proxy stock and (c) the adequacy of the proxy statement for the Annual Meeting of Brown-Borhek Company at which the Resolution of Ratification was carried. We shall consider these related questions together.

It is well settled that directors acting for themselves as stockholders are entitled to vote their stock in their own self interest and for their own benefit so long as there is no fraud, overreaching or attempt to intentionally dissipate the corporation's assets. *Chambers v. Beaver-Advance Corp.,* 392 Pa., supra, page 488 and ten cases cited therein; *Reifsnyder v. Pittsburgh Outdoor Advertising Co.,* 396 Pa. 320, 152 A. 2d 894; *Lowman v. Pierce Co.,* 276 Pa. 382, 120 A. 404; *Russell v. Henry C. Patterson Co.,* 232 Pa. 113, 81 A. 136.

Plaintiff in his reply to defendants' answer raised a further issue, namely, that two of the interested defendants held the proxies of "a substantial majority of the stockholders," and that as interested parties these defendants could not vote the proxies in favor of the exonerating ratification resolution.

The vote of a proxy is binding on the stockholder who gives it, provided it is not exercised in bad faith. *Lowman v. Pierce,* 276 Pa. 382, 387, 120 A. 404; Fletcher Cyclopedia Corporations, Vol. 5, §2060, pp. 232-3. Fletcher thus aptly states the law: "As a rule, where a proxy is duly constituted, and the power to vote thereby conferred is unlimited, a vote by the proxy binds the stockholder to the same extent as if cast by the stockholder in person, and this is generally held to be true even though the power conferred is exercised against the interest of the corporation, or of the stockholder, unless the vote was the result of fraud or collusion by the proxy and others against the giver of it, or the vote is so contrary to the stockholder's interest as to show that the proxy must have acted in bad faith."

In the instant case the stockholders were fairly and fully informed that, because of Smith's pending suit, the actions of the officers and directors in connection with the Raydel Account were to come before the annual meeting for consideration and approval. There was no fraud or concealment.

The notice of the Annual Meeting included the following paragraph among the matters to be considered: "2. To review in detail the manner in which the officers and directors of the Company handled the account of Raydel Homes Corporation and its predecessor companies (which matter is the subject of a stockholders' suit filed in the Court of Common Pleas of Lehigh County, Pennsylvania, by Leland E. Smith), and to entertain any resolutions which might be offered concerning this matter."

The proxy did not contain—as required by the rules of the Securities & Exchange Commission with reference to securities listed on the Exchange—a provision permitting or directing the proxy to vote *for or against* management's conduct of the Raydel matters. This was not necessary, since the stockholders were on no-

tice that this question and an appropriate resolution would be presented at the meeting.

At the meeting itself, the President made an extended statement of all the transactions involving Raydel and management's reasons therefor. This was made a part of the record by defendants' answer, and in important matters, relevant herein, was not denied in plaintiff's reply. Even if we do not accept at face value every statement and explanation made by the President and contained in defendants' answer, it is clear that a full disclosure was made to the stockholders. Plaintiff complains in essence and in effect that the President presented the facts in a light favorable to management and very unfavorable to plaintiff's theory of this case.

If, as here, the directors could properly vote their own stock in favor of ratification and exoneration, they similarly could properly vote the stock of other shareholders who before they signed a proxy were fairly informed of the issues which were to be considered and voted upon.

Moreover, if the 3,858 shares held in trust for certain individual defendants were not entitled to vote and if the 867 shares which the officers and directors own individually are substracted from the vote in favor of the resolution, the resolution still carried by 1,968 to 405.

We find no merit in any of plaintiff's contentions.

Judgment affirmed.

Mr. Justice EAGEN concurs in the result.

———

CONCURRING OPINION BY MR. JUSTICE ROBERTS:

I concur with the majority in affirming the judgment of the court below. However, since the majority find no impropriety—by way of negligence or otherwise—in the conduct or actions of the board of directors, I see no reason or need, on this record and under

the circumstances recited in the majority opinion, to consider or rule on the question of ratification by the shareholders. It is an issue not necessary to the proper disposition of the case.

---

DISSENTING OPINION BY MR. JUSTICE COHEN:

The majority agrees that the general rule which permits shareholder's ratification is subject to the limitation that: " ' ". . . *'the majority stockholder may not,* as against the corporation and minority stockholder, dissipate or waste its funds, or fraudulently dispose of them in any way, either by ratifying the action of the board of directors . . . or by any other [similar] act.' " Lowman v. Pierce Co., 276 Pa. 382, 396.' " (Emphasis supplied).

The Court of Chancery of the State of Delaware, a sophisticated jurisdiction in the determination of corporate issues, has held that: "Plaintiffs correctly state the well-settled rule to be that a waste of corporate assets is incapable of ratification without unanimous stockholder consent." *Saxe v. Brady,* 40 Del. Ch. 474, 478, 184 A. 2d 602, 605 (1962). Fletcher Cyclopedia Corporations comments that "ratification does not relieve the directors from the legal consequences of their alleged wrongful acts." Vol. 2, Ch. 11, §764 (rev. vol. 1954).

The Federal Court of Appeals for the Second Circuit has gone so far as to say that a shareholder's vote cannot prevent the institution of a derivative suit or annul one once it has been brought. *Gottesman v. General Motors Corporation,* 268 F. 2d 194, 197 (2d Cir. 1959).

Here the majority brushes aside plaintiff's complaint as portraying "defendants' alleged failure to act as [plaintiff] would have had them do, as a failure to exercise wise business judgment." By this statement the majority finds the conduct, which by defendants'

own admission constituted negligence and mismanagement, innocuous.[1]  Further, the majority holds that plaintiff does not allege any intentional dissipation or waste of corporate funds.  I do not so read the complaint.  The complaint alleges that the officers and directors of the defendant corporation did not manage the corporation as required by the Act of May 5, 1933, P. L. 364, §401, as amended, 15 P.S. §2852-401.  Plaintiff complains that defendants did not exercise any business judgment, good or bad; that there was no action taken by the board of directors or officers, but a complete abdication of their obligation to manage and supervise the corporate affairs.  The complaint clearly alleges a failure to act, a nonfeasance on the part of the directors, and a resulting loss, waste and dissipation of corporate assets.  I would consider these allegations, together with the loss of $650,000, representing 63% of the corporate assets, to be clearly indicative of waste of an aggravated nature.

The majority's determination severely erodes the policy of Section 408 of the Business Corporation Law, 15 P.S. §2852-408.  In reality, by virtue of the majority's determination, ratification by the shareholders of the actions of the officers and directors is rendered nothing more than an exculpation in which the shareholders assume the role of a board of pardons.  The result of the majority opinion is to approve the failure on the part of the officers and directors to manage the business—not their failure to properly manage the business but their failure to even consider the problems of the business—and to relieve the directors of their responsibilities as fiduciaries and to exonerate them

---

[1] The first counter-statement of the questions involved filed by defendants-appellees is as follows: "In the absence of fraud, illegality, waste, or inside profit, negligence and mismanagement by the directors of a business corporation can be ratified by the shareholders?"

from all wrongdoing. This determination illustrates the extreme in the breakdown of democratic processes in Pennsylvania corporations and makes the ownership of a minority interest in a Pennsylvania corporation a most hazardous venture.

I dissent.