## Susquehanna Mutual Fire Insurance Company, Plff. in Err., *v.* R. J. Hallock and Wife, in Right of the Wife.

An alleged copy of an application, attached to a policy of insurance and referred to therein, which does not purport to be signed by the applicant, fails to conform to the requirements of the act of May 11, 1881 (P. L. 20), and therefore, by force of that act, the application cannot be received in evidence in any controversy between the parties to the policy, nor can it be considered a part of the policy or contract.

Evidence that after receiving and objecting to informal proofs of loss under a fire insurance policy, the officer of the insurance company, authorized to pass upon the proofs, called on the insured and stated that he had come to adjust the loss, and commenced to draw up for the insured formal proofs of loss, but went away before completing them and without giving the insured an opportunity to sign them,—*Held,* sufficient to call for a sub-

NOTE.—For other cases as to the force and effect of the act of May 11, 1881, see Metropolitan L. Ins. Co. v. Jenkins, 4 Sad. Rep. 197; Lebanon Mut. Ins. Co. v. Leathers, 5 Sad. Rep. 226; New Era Life Asso. v. Musser, 120 Pa. 384, 14 Atl. 155.

mission to the jury of the question whether the requirements of the policy in reference to proofs of loss were not waived by the company.

(Argued April 13, 1888. Decided May 14, 1888.)

January Term, 1888, No. 377, E. D., before GORDON, Ch. J., PAXSON, STERRETT, GREEN, CLARK, and WILLIAMS, JJ. Error to the Common Pleas of Luzerne County to review a judgment in favor of the plaintiff in an action of debt on a fire insurance policy, October Term, 1885, No. 589. Affirmed.

Attached to the policy in suit was what purported to be a "Copy of Application," but before the word "Applicant," at the foot thereof, there was a blank, and no signature of an applicant appeared anywhere on the paper.

The charge of the court below, RICE, P. J., in which the facts are stated, was substantially as follows:

On June 18, 1884, this defendant company issued a policy of fire insurance to Mrs. Hallock, the plaintiff, for $500. The policy was to run for a year. According to the undisputed testimony, on August 18, 1884, there was a partial or total destruction of the premises by fire. It is also in evidence, and not disputed, that at this time there was $2,000 other insurance upon the property—$1,500 in the London Assurance Corporation and $500 in the Clinton, and $500 in the Susquehanna Mutual Insurance Company, upon which latter policy suit has been brought, and about which there are some disputed questions of fact and law. In the first place it is claimed on the part of the defendant that the policy was altered after it left the hands of the company, as to the amount of other insurance allowed. It is claimed that this alteration consists in a change of that amount from $1,000 to $2,000. Now, if, as a matter of fact, after it left the hands of the company, and without its consent, the policy was thus altered, then there can be no recovery in this case. There is no dispute between the parties as to that legal proposition. Was there such an alteration? That is a question of fact to be decided by the jury.

In the next place, it is contended that the company cannot be held in this action, because there was a failure upon the part of the plaintiff to comply with the conditions of the policy with regard to preliminary notice of the fire and proofs of loss. This

policy provides, among other things, that "when a fire has occurred injuring the property herein described, the assured shall use all practicable means to save and protect the same, and shall forthwith give notice of the loss, in writing, to the secretary of this company."

This is a notice of loss as distinguished from proofs of loss, which we shall hereafter refer to.

Under the testimony, the fire having occurred on August 18, 1884, a letter was sent on August 23, 1884, mailed to the secretary of the company at Harrisburg. There is no denial of the receipt of that letter; and, therefore, we say that you may infer from that that the company received notice of the loss. The policy provides, further, that "claims for loss and damage under this policy shall be limited to the property as above specified, described, and located, subject to the following terms and conditions:"

Among these is the following: "A particular statement of the loss shall be delivered to the secretary of this company within twenty days after the fire, signed and sworn to by the assured, setting forth: First, the written portion of the policy and all indorsements thereon; second, other insurance, if any, whether valid or not, on the same property or any portion thereof, with copies of the written portion of each policy and the indorsements thereon; third, the actual cash value of the property insured, at the time immediately preceding the fire; fourth, the ownership of the property insured, the interest of the insured and all others therein, and all encumbrances thereon; fifth, any changes in title, use, occupation, possession, or exposure of said property that may have occurred since the issuing of this policy; sixth, how, by whom, or for what purpose the building insured or containing the property insured and the several parts thereof, were used at the time of the fire; seventh, date of loss and amount; eighth, how, at what hour, and under what circumstances the fire originated, so far as the insured may know or was informed or believed; ninth, whether the premium for this policy was actually paid in cash before the ——; tenth, an inventory of the property insured, showing, article by article and item by item, the actual cash value thereof; eleventh, in case of loss, if the property was held in trust or commission, or if the interest of the assured be other than the entire and sole-owner-

ship, the names of the respective owners shall be set forth together with their respective interests therein."

Now, you will observe that according to the conditions of this policy, the proofs of loss which the assured was bound to furnish to the secretary of the company within twenty days required a statement as to several different particulars. The questions arise, Were these conditions complied with? If they were not, was literal compliance therewith waived? Now, under the undisputed testimony, on September 6, which would have been within the twenty days, the plaintiff, through her husband, who acted apparently as her agent in this whole business, sent a letter to the company, which has been read in your hearing, stating that the property was destroyed and what other insurance there was on it, also including an appraisement of the property, and concluding with the request that if their proof was not satisfactory, the company should let them know at once. This letter will be submitted to you when you go out. On examination of it and the accompanying appraisement of loss we are compelled to say that it is not a compliance with the conditions of the policy. It omits a statement as to many things which that policy requires to be stated in this proof of loss; and unless the company, through its authorized officer, did something to waive strict and literal compliance with the conditions of the policy, then there could be no recovery in the present case. Was there such waiver? Further, according to the undisputed testimony, on September 10, 1884, the secretary sent a letter to the plaintiff, acknowledging the receipt of the letter sent on September 6, and specifying wherein the proof of loss was defective, and asking that they make out proofs in accordance with the conditions of the policy, stating that plaintiff's proof of loss does not set forth how the building was finished, how large it was, or how long it had been used.

Now, there is a class of cases which hold that where proofs of loss are furnished to the company within the required time and there has been a total loss, it is the duty of the company, if there are any formal defects in the proofs, to immediately call the attention of the assured thereto, and that if they do not do so they may be held to have waived those defects. That rule cannot be applied to this case—for the reason, as we have stated, that, under the undisputed testimony, on the 10th of September, the secretary of the company did write a letter to the plaintiff objecting

to the proof of loss and calling attention to the defects therein; so that there was no waiver of the defects in the proofs of loss by reason of a failure to object promptly. Was there a waiver by the subsequent acts or conduct of the company? [This condition with regard to the proofs of loss was a condition inserted in the policy for the benefit of the company, and being for its benefit it might waive compliance with it.] [8]

That waiver might be expressed. For example, if the secretary had stated to the assured, "You need not furnish any further proofs of loss," that would be an express waiver. A waiver also may be found from the acts and conduct of the company through its authorized officers. Was there a waiver of literal compliance with the conditions of the policy by the action of the defendant company, through its authorized officer, after September 10, 1884? For we say to you that up to that time there had been no waiver. According to the testimony on September 12, 1884, two days after the date of the letter containing the objections to the proof of loss, Mr. Huntzinger, the secretary of the company, to whom, as I have read to you from the policy, the proof of loss was to be furnished, went to Pittston and examined the premises. According to the testimony of Mr. Hallock he said he had come to adjust the loss, and started to draw up for them formal proofs of loss; that before completing the paper or giving them a privilege to sign it, he went away, saying he was going to the office of Mr. Jones, the insurance agent; that he, Hallock, subsequently met him as he was going away, and that Huntzinger told witness he would return. On the other hand, Mr. Huntzinger testifies that while he went to the premises and examined them and some talk took place between him and the plaintiff, yet the plaintiff refused to sign the proof he drew up, and that before going away from Pittston he served on them a notice that his coming to Pittston did not waive any of the conditions of the policy.

Now, as we understand the law applicable to this question of waiver, there is a question of fact to be decided by you. There is a conflict in the evidence which you must decide; and it is to be decided according to your conscientious belief as to the facts, and not according to your convictions of what ought to be the final result of the case. If the facts be as testified to by Mr. Huntzinger, then there was no waiver by his conduct on that occasion; because he says that he then and there gave to Mr. Hal-

lock a paper expressly stating that his coming to Pittston was not to be considered a waiver; and if he gave Mr. Hallock such a paper, that was notice to him that he was to be held to a strict compliance with the conditions of the policy.

But [if, on the other hand, you find from the testimony of Mr. Hallock that the secretary of the company by his examination, which he made on September 12, and by the defective proof sent on September 6, did obtain the information which a perfectly formal proof of loss would have given, and by his conduct led the plaintiffs to suppose that fuller proof would not be required, in consequence of which they failed to furnish such proof, then we hold that you would be justified in finding that the company waived strict and literal compliance with this condition of the policy, and the fact that the proofs were defective would not defeat a recovery.] [8] It is for you to determine this question of fact.

Another question has been raised, which, as we now view it, is purely a legal question; but in order to dispose of the whole case at this time we will state, briefly, our views upon it.

One of the clauses of this policy provides as follows:

"The assured by the acceptance of this policy hereby warrants that any application, plan, verbal statement, or description, connected with the procuring of this insurance, or contained in, or referred to in this policy, or any representation made by the assured or his representative, is true, and shall be a part of this policy; that the assured has not overvalued the property herein described, nor omitted to state the full amount of encumbrances thereon, and has given all information to this company material to the risk; and this company shall not be bound under this policy by any act of, or statement made by or to, any agent or other person, which is not contained in this policy, or in any written paper above mentioned."

It is proved as a matter of fact that at the time this policy issued there was a mortgage upon the property of $3,300, accompanied by a bond upon which a judgment had been entered; this was an encumbrance upon the property. Now, if a written application by the assured had been produced in evidence, showing an untrue answer as to the encumbrances, that would be proof of a breach of the above warranty, and would avoid the policy. But an act passed in 1881 provides that unless a correct copy of such application, as signed by the applicant, shall

be attached to and accompany the policy, it shall not be received in evidence in any controversy between the parties, nor shall it be considered a part of the policy or contract between the parties. Now, no application has been produced in evidence here; but it is contended that the plaintiff is bound by the representations contained in a paper annexed to the policy, and entitled "Copy of Application," and that she warranted the truthfulness of the same in all particulars.

If this proposition is sustained, then, undoubtedly, there is proof of a breach of the warranty. But we cannot concede the soundness of this proposition. The paper called "Copy of Application" does not purport on its face to be the application of the assured, nor of anyone acting for her, and, although attached to the policy, it is not made a part of the same. Neither do we think she is estopped by the statement of this paper any more than she would be by any other indorsement on the policy not made a part of the contract.

Therefore, whatever may have been the fact as to the breach of the warranty as to the encumbrances, there is a failure of legal proof of the same.

To recapitulate; if the policy was altered after it left the company there can be no recovery in this case. If, however, it is in the same condition that it was when it was received by Mr. Jones, the insurance agent, and delivered to the plaintiff, then the apparent alteration would not vitiate the policy.

Second. If the defects in the proofs of loss were not waived by the company, by its acts and conduct after September 10, 1884, the plaintiffs cannot recover. But if, under our instructions as to what is necessary to constitute a waiver, you find that there was a waiver by the acts and conduct of the secretary, subsequent to September 10, 1884, then the defects in the original proofs of loss are not fatal to the plaintiffs' case.

Third. There is no legal proof as to the breach of the warranty as to encumbrances.

The defendant company submitted, *inter alia,* the following points:

2. The policy with all its conditions, statements, and stipulations constitutes the contract between the parties, and the statements made at the end thereof under the head of "Copy of Application" are part thereof and binding on the plaintiff.

*Ans.* This is answered in the negative. [1]

3. As the policy fully recites the facts as stated, it was notice to the assured on what understanding of facts the policy was issued; and if the recital was untrue in any particular, it was the duty of the insured to promptly disavow it; and having failed to do so she is now held to the truth of the statements made in the policy.

*Ans.* We understand that that point refers to the statements made in the portion of the paper headed "Copy of Application," and so understanding it we answer it in the negative. Of course, whatever recitals appear in the body of the policy itself would be binding on the assured. [2]

6. The policy recites existing insurance of $500 in the People's of New York and $500 in the Clinton of New York and if there was in addition $1,500 in the London, the total would be $2,500; and hence the policy in suit never took effect, even though the indorsement of $2,000 other insurance was made on the policy when written.

*Ans.* This is answered in the negative. [3]

7. If there was not $500 in the People's and $500 in the Clinton on June 16, 1884, then there was a breach of the warranty in this respect and the plaintiffs cannot recover.

*Ans.* This is answered in the negative. [4]

8. If there was on June 16, 1884, the date of the policy in suit, also a policy of $500 in the London Company, plaintiffs failed to disclose it and have it indorsed on this policy, and therefore cannot recover by reason of the breach of warranty, as well as by reason of the stipulation in this policy against existing insurance on the property.

*Ans.* This is answered in the negative. [5]

9. The policy recites that the premises were free from encumbrances, whereas a mortgage is shown to have been a lien at the time on the premises, and the policy is therefore void.

*Ans.* This is answered in the negative. [6]

10. The proofs of loss were insufficient and were promptly objected to by the defendant's secretary.

*Ans.* This point is affirmed. The question is, as we have already stated, whether those defects were waived by the subsequent conduct of the secretary. [7]

Verdict and judgment for plaintiff; whereupon, defendant

took this writ, assigning for error: (1–7) The answers to the above points; and (8) the portions of the charge in brackets.

*G. R. Bedford,* for plaintiff in error.—The first branch of the propositions presented by the point set out in the first assignment of error is sustained by West Branch Ins. Co. v. Helfenstein, 40 Pa. 296, 80 Am. Dec. 573; Weisenberger v. Harmony F. & M. Ins. Co. 56 Pa. 443; and Universal Mut. F. Ins. Co. v. Weiss, 106 Pa. 25.

In Fire Asso. v. Williamson, 26 Pa. 196, and Desilver v. State Mut. Ins. Co. 38 Pa. 132, it is ruled that conditions annexed to a policy of insurance are as much a part of it as if incorporated in the policy itself; and in those cases it does not appear that the conditions were specifically referred to in the body of the policy.

In the Kensington Nat. Bank v. Yerkes, 86 Pa. 227, the court held that the conditions referred to in the policy form a part of it, although unsigned and printed on the back of the instrument.

That the proofs of loss were insufficient on their face is abundantly shown by the charge and by the case of German American Ins. Co. v. Hocking, 115 Pa. 398, 8 Atl. 586.

The sixth condition of the policy is as follows: "Nor shall any printed or written term, condition or restriction in this policy be considered as waived unless such waiver is clearly expressed and indorsed on this policy in writing by an authorized officer of the company." This language is similar to that employed in the policies in Waynesboro Mut. F. Ins. Co. v. Conover, 98 Pa. 384, 42 Am. Rep. 618, and Universal Mut. F. Ins. Co. v. Weiss, 106 Pa. 20, both of which held that the waiver was insufficient.

"A waiver must be intentional, and that must be shown clearly and satisfactorily, either by acts or declarations." Desilver v. State Mut. Ins. Co. 38 Pa. 132.

*C. F. Bohan* and *Garrick M. Harding,* for defendants in error.—The pretended copy of the original application which occasioned the suit in the court below, and which forms practically the whole basis of the argument of the plaintiff in error in this court, is not properly in the case at all. Imperial F. Ins. Co. v. Dunham, 117 Pa. 460, 2 Am. St. Rep. 686, 12 Atl. 668.

PER CURIAM:

The act of May 11, 1881 (P. L. 20), answers most of the assignments of the plaintiff in error; for by that act, if any use is to be made of the application, there must be a correct copy thereof "as signed by the applicant" attached to the policy. No such copy appearing in this case, the alleged copy appended to the policy, not conforming to the requirements of the act, was properly rejected.

The remaining assignments relating to the proofs of loss cannot be sustained, for there was such evidence of waiver as to require its submission to the jury.

The judgment is affirmed.