## FIDELITY & CASUALTY CO. OF NEW YORK v. HOWE.

## NATIONAL LIFE ASS'N OF DES MOINES, IOWA, v. SAME.

### Nos. 4136, 4137.

Circuit Court of Appeals, Third Circuit.

Jan. 8, 1930.

Rehearing Denied March 31, 1930.

W. Pitt Gifford, of Erie, Pa., John C. Sherriff, and Sherriff, Lindsay, Weis & Hutchinson, all of Pittsburgh, Pa., and Gunnison, Fish, Gifford & Chapin, of Erie, Pa., for appellants.

Chas. H. English and English, Quinn, Leemhuis & Tayntor, all of Erie, Pa., for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge.

In the court below, Lenora J. Howe, a citizen of Pennsylvania and the beneficiary in two policies of life insurance issued by the National Life Association, a corporate citizen of Iowa, on the life of her husband, brought suit thereon against that company and recovered a verdict. She, likewise, as beneficiary brought suit against the Fidelity & Casualty Company, a corporate citizen of New York, on certain accident policies issued to her husband and recovered a verdict. Each company took an appeal, and as they involve substantially the same situation, their appeals will be disposed of in a single opinion.

Briefly stated, the proofs made by Mrs. Howe were that her husband was burned to death about 4 o'clock on the morning of November 4, 1927, while driving alone in his automobile. The contention of the companies was that there was no sufficient proof of his death and inferentially that he had absconded with a view to defrauding them. On these appeals both companies raise the question: First, whether the evidence of the good reputation of the insured as an upright and law-abiding citizen in the community where he resided was admissible; secondly, whether there was sufficient evidence of death in the life policy case, and of accidental death in the accident policy case, to submit the case to the jury; and, thirdly, the accident company says the court erred in refusing to receive evidence of misrepresentations made by the insured in his application for insurance.

Taking up these questions seriatim, we note testimony on the part of the plaintiff was adduced tending to show that on the morning of November 3, 1927, Howe left his wife and their apartment in Erie, Pa., about 9:30. He told his secretary he would not be back to the office that day. Nothing unusual occurred before he left in his automobile. He was next heard from at Cambridge Springs, a village some 25 miles distant from Erie. There he stopped at a hotel for dinner about 6 o'clock. The proprietor testified he knew him well, that he came to his hotel quite frequently, that he cashed a small check for him as he had often done, that he spoke to him, and that "he had his usual smile, and calm as he always was." While there Howe called his wife's millinery store by phone, and asked his sister-in-law, who answered the phone, to tell his wife that he was near Cambridge Springs; that he had had trouble with his car and he would not be home until late.

This was the last heard of him. About 4 o'clock the next morning, his automobile was discovered on fire, in a ditch by the roadside about eight miles from Erie on the road running to that city from Cambridge Springs, and an unrecognizable male body was found burned therein, sitting at the wheel. Later a Masonic charm with Howe's name on it, a watch, keys, a knife, and dental bridge work—all proven to have been his—were found in the ashes. The proofs showed the car had left the paved road some 600 feet from where it burned, mounted the bank to the edge of a street car line, then came down, avoided by a sharp turn a roadside culvert, and then went to the place where it was burned. It was in high gear when found. Inside the car, which was of the sedan closed type, were found two five-gallon cans such as are used for gasoline or oil, one behind the body and one on the seat beside it. The fire reached 20 to 30 feet high and was so intense as to melt the metal top and sides of the car.

It was also shown that the relations between Howe and his wife were of an unusually close and affectionate character; that he communicated with her daily when they were apart; that he had a large circle of friends; that he did a considerable business in real estate and insurance; that while he was in debt, no one was pressing him; that his assets exceeded his liabilities; and that his reputation in the city of Erie, as an upright and law-abiding citizen, was excellent. [1, 2] In view of these proofs by the plaintiff, for on the question of taking the case

from the jury we are concerned with her proofs and not with the countervailing proofs of the defendants, we are of the opinion the trial judge rightly denied the defendants' requests for binding instructions and rightly submitted to the jury the question whether Howe died on November 4 and, if so, whether his death resulted from accident.

Coming then to the evidence as to Howe's character and reputation in his community, we note that it was the contention of the companies that Howe had absconded. The plaintiff called a number of representative citizens of Erie to show that his reputation as a law-abiding and upright citizen was excellent and that nothing had been heard of him since his car was burned. Was it error to receive such proof? We think not. While not stated in those words, the contention of the companies in effect was that Howe had absconded, so that the insurance could be fraudulently collected. Whether he was burned to death or had absconded was a speculative question which had to be determined by the jury from a consideration of the circumstances throwing light on that question. Amongst those circumstances are the two usual considerations leading one to continue to live in his situation or to escape from that situation by disappearing. And in that regard the recognized reputation of a man in his community, when proven, is an element to be given due consideration by a jury. Sensenderfer v. Pacific Mut. Life Ins. Co. (C. C.) 19 F. 68; 17 Corpus Juris, p. 1176; 2 Chamberlaynes Modern Law of Evidence, § 1106. The consensus of authorities in that regard is summarized in 8 R. L. C. p. 713, where it is said:

"Thus evidence of character, habits, domestic relations, and the like, making the abandonment of home and family improbable, and showing a want of all those motives which can be supposed to influence men to such acts, may be sufficient to raise the presumption or to warrant an inference of the death of one absent and unheard from, without regard to the duration of such absence."

We are of opinion that in view of the circumstances of this case, the court was not in error in admitting the testimony complained of.

As to the remaining question, it suffices to say we are in accord with the court below when it said:

"A second reason is based upon the exclusion of testimony offered by the defendant for the purpose of showing that certain allegations as to income made by Willard Howe

in his application were untrue. The application attached to the insurance policy offered in evidence was unsigned by the applicant. The basis of the exclusion was the provision in the Pennsylvania Act of 1921, P. L. 682 (Pa. St. Supp. 1928, § 12490b—318) as follows:

" 'All insurance policies, issued by stock or mutual insurance companies or associations doing business in this State, in which the application of the insured, the constitution, by-laws, or other rules of the company form part of the policy or contract between the parties thereto, or have any bearing on said contract, shall contain, or have attached to said policies, correct copies of the application as signed by the applicant, or the constitution, by-laws, or other rules referred to; and, unless so attached and accompanying the policy, no such application, constitution, or by-laws, or other rules shall be received in evidence in any controversy between the parties to, or interested in, the policy, nor shall such application, constitution, by-laws, or other rules be considered a part of the policy or contract between such parties. (1921, May 17, P. L. 682, art. III, Par. 318).'

"We examined this matter with some care at the time the objection was made and have found no reason to come to a different conclusion than that reached during the trial. The above quoted statute rules the matter and required the exclusion of the testimony."

No error being involved in any of the questions raised, the judgments below are affirmed.