Ross, Appellant, *v.* Metropolitan Life Insurance Company.

136

Argued January 9, 1961. Before Jones, C. J., Bell, Musmanno, Jones, Cohen, Bok and Eagen, JJ.

*Peter P. Zion,* for appellant.

*Owen B. Rhoads,* with him *John T. Subak,* and *Barnes, Dechert, Price, Myers & Rhoads,* for appellee.

Opinion by Mr. Justice Bell, March 23, 1961:

This is an appeal from an Order which overruled plaintiff's motion for judgment on the pleadings under Rule 1034 of the Rules of Civil Procedure. This appeal raises several questions of law which, as we shall see, are very close.

A motion for judgment on the pleadings, like preliminary objections, is the equivalent of the old statutory demurrer and admits all facts which are well pleaded. *Necho Coal Co. v. Denise Coal Co.,* 387 Pa. 567, 128 A. 2d 771; *Gardner v. Allegheny County,* 382 Pa. 88, 114 A. 2d 491. Such a motion should be granted and judgment should be entered only in a case which is clear and free from doubt, or as it is sometimes expressed, only when it is clear that no meritorious legal defense is raised. Cases, supra.

In order to avoid any possible future misunderstanding, we note that the Order of the lower Court which overruled plaintiff's motion for judgment on the pleadings, although interlocutory, is appealable under the Act of April 18, 1874,* as analogous to a motion for judgment for want of a sufficient affidavit of defense. *Syme v. Bankers National Life Insurance Co.*, 393 Pa. 600, 144 A. 2d 845.

Plaintiff, the beneficiary in an insurance policy issued on the life of her husband, Sidney Ross, brought an action in assumpsit to recover the proceeds of this policy which was issued by defendant. On December 3, 1956, Ross answered the questions in and signed Part A of an application to defendant for a $10,000 ordinary whole life insurance policy. On December 15, 1956, Ross answered the questions in and signed Part B of an application for the same policy. On December 28, 1956, defendant notified Ross that it would not issue an ordinary whole life insurance policy because of his high blood pressure, hypertension, and personal history, but would issue *an intermediate whole life policy*, assuming heart chart and urine specimen were satisfactory.

The intermediate whole life policy required payment of higher premiums than an ordinary whole life policy. On January 30, 1957, Ross applied for this intermediate whole life policy by executing an *application amendment* which was attached to the policy. This amendment changed the insurance classification from ordinary whole life to intermediate whole life and made some change in the plan of payments. Defendant, based upon the application and the application amendment *which were dated and duly signed by applicant* (after having been specifically filled out and answered) issued an intermediate whole life in-

---

* P. L. 64, 12 PS §1097.

surance policy upon which plaintiff has brought the present suit. Although this policy was given to Ross by defendant after he executed the application amendment, it became effective as of December 28, 1956.*

A copy of the application and of the application amendment—the correctness of this copy is one of the three principal issues which are raised by plaintiff in this appeal—was attached to the policy which was delivered to Ross. *This copy* of the application amendment was neither signed nor dated, but was otherwise identical with the original application amendment which was dated and signed by Ross.

Defendant's answer averred that Ross had made certain false and fraudulent misrepresentations in his application for an ordinary whole life policy and averred with particularity what these fraudulent misrepresentations were.

Ross died on February 8, 1958, within the two year contestability period. Defendant upon discovery of the alleged fraudulent misrepresentations, denied liability on the policy and offered to return to plaintiff the paid premiums of $638.10. This offer was declined.

Appellant-plaintiff first contends that an answer which is set forth in an application for a policy of life insurance, no matter how false or fraudulent the answer may be, is unavailable to the insurance company as a defense when the application is for a different policy than the policy of insurance to which a copy of it is attached: *Syme v. Bankers National Life Insurance Co.*, 393 Pa. 600, 144 A. 2d 845 (1958); *Fidelity Title & Trust Co. v. Metropolitan Life Insurance Co.*, 305 Pa. 296, 157 A. 614; The Insurance De-

---

* There is a conflict in the pleadings as to the date of delivery to Ross.

partment Act, May 17, 1921,* §441. It is not necessary to decide whether that well settled principle is applicable to the present case, since the original application became a part of the policy issued to Ross by the terms of the amended application, but only if the amended application is valid. Both the original application and the amended application were attached to the policy.

The policy pertinently provides: "This policy and the application therefor, a copy of which is attached hereto as a part hereof, constitute the entire contract between the parties, . . . and no statement shall avoid this Policy or be used in defense of a claim hereunder unless it is contained in the application therefor and a copy of such application is attached to this Policy when issued. . . . This Policy is issued . . . in consideration of the Application therefor, a copy of which Application is attached hereto and made part hereof. . . ."

The application amendment which was attached to and integrated with the original application and made a supplemental part thereof, provides, inter alia: "The undersigned hereby amends the application for Life Insurance made to your Company . . . . These amendments and declarations are to be considered as a part of the said application and subject to the agreements, covenants, and statements therein contained. The said application, together with these amendments, is to be considered as the basis of and as a part of the contract of insurance."

Appellant's second contention is that since a *copy* of the application amendment which was attached to the intermediate whole life insurance policy when it was issued to the insured, *was unsigned by the in-*

---

* P. L. 682, 40 PS §441. We shall hereinafter refer to the fact that this Act reenacts verbatim the Act of May 11, 1881, P. L. 20.

*sured and undated,* it is not a *correct* copy and is a nullity and its legal effect is that of a blank sheet of paper.

We shall consider this second contention first, because it will dispose of the case.

Section 318 of The Insurance Department Act of 1921, 40 PS §441, provides: "All insurance policies . . . in which the application of the insured . . . form part of the policy or contract between the parties thereto, or have any bearing on said contract, shall contain, or have attached to said policies, *correct\** copies of the application as signed by the applicant . . . and, unless so attached and accompanying the policy, no such application . . . shall be received in evidence in any controversy between the parties to, or interested in, the policy, nor shall such application . . . be considered a part of the policy or contract between such parties."

The Insurance Company contends first that the Application Amendment is a correct copy of the application as signed by the applicant, since (a) it sets forth, without any error, all of the substantive provisions and (b) the date and signature are unnecessary, in view of the above quoted language of the Act (which it says does not require the signature to be shown), and second if there were error, the error is harmless, and third, an Act should not be interpreted (a) to produce an unreasonable or absurd result or (b) to aid in the perpetration of a fraud.

The exact factual situation arose in *Susquehanna Mutual Fire Insurance Co. v. Hallock,* 10 Sadler 386, and in *Fidelity & Casualty Co. v. Howe,* 38 F. 2d 741 (3rd Cir.) and both cases were decided adversely to the Insurance Company. The decision of the Court in those cases is well summarized in the syllabus of *Sus·*

---

\* Italics throughout, ours.

*quehanna*: "An alleged copy of an application, attached to a policy of insurance and referred to therein, which does not purport to be signed by the applicant, fails to conform to the requirements of the act of May 11, 1881 (P.L. 20), [which was repeated verbatim in the Act of 1921] and therefore, by force of that act, the application cannot be received in evidence in any controversy between the parties to the policy, nor can it be considered a part of the policy or contract."

The pertinent principles are set forth in the recent case of *Syme v. Bankers National Life Insurance Co.*, 393 Pa., supra. In that case the Court *excluded* an application which was allegedly fraudulently made where the application contained an alteration unsigned by the applicant which requested a policy entirely different from the one accepted by the insured. The Court appositely said (pages 606-607, 609): ". . . 'It is well known that the evil aimed at in this legislation was the custom of insurance companies to put in their blank forms of application long and intricate questions or statements to be answered or made by the applicant, printed usually in very small type, and the relevancy or materiality not always apparent to the inexperienced, and therefore liable to become traps to catch even the innocent unwary. The general intent was to keep these statements before the eyes of the insured, so that he might know his contract, and if it contained errors, have them rectified before it became too late.'

"The Insurance Company Law expressly provides that the copy of the application, attached to a policy must be a correct copy. If it is not an exact duplicate of what was submitted by the insured, the entire application must be disregarded and may not be used thereafter as the basis of a defense by the insurer: Ellis v. Metropolitan Life Insurance Company, supra;

McCaslin v. Metropolitan Life Insurance Company, 59 Pa. Superior Ct. 475, 476-477. The rule was well stated, as approved, in McCaslin v. Metropolitan Life Insurance Company, supra, as follows: 'If a correct copy of the application is not attached to the policy, in accordance with the requirements of the Act of May 11, 1881, P. L. 20, it is no part of the contract, and it is to be considered as if no such paper existed and a recovery may be had upon the policy alone [Muhlenberg v. Insurance Co., 211 Pa. 432, 60 A. 995, and other cases cited].' . . .

" '. . . The Act is intended to protect the policy holder: Lenox v. Greenwich Ins. Co., 165 Pa. 575. It was passed in the interest of fair dealing, and its provisions should be strictly enforced: Pickett v. Pac. Mut. Life Ins. Co., 144 Pa. 79.' "

Considering the language and purposes of the Act, what is the meaning of a "correct" copy? Do trivial and immaterial errors in the copy which do not mislead the insured nullify and make inadmissible the application, and if so, what is a trivial error?

The Insurance Company contends that the error must be (a) substantial, and (b) one which will mislead the insured, citing the following cases which support this contention: *Susquehanna Mutual Fire Ins. Co. v. Oberholtzer*, 172 Pa. 223, 228 (1895); *McCaslin v. Metropolitan Life Insurance Co.*, 59 Pa. Superior Ct. 475, 478 (1915).

A few examples will suffice to illustrate why a literal interpretation of the Act requiring every word to be accurate and exact will not be adopted and applied, if and when it produces a result that is unreasonable or absurd: Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §552. For example, an erroneous insertion or omission of "the" or "an", or the misspelling of a word, or an erroneous date if such error is otherwise immaterial, or if there be other trivial er-

rors, such a copy, literally speaking, would not be a correct copy. However, while the Act must be strictly construed in favor of the insured, we believe it must nevertheless be reasonably interpreted. So interpreted, a copy of the application or of the application amendment is not a correct copy within the meaning of the Act if it does not contain the date or the signature of the applicant: *Susquehanna Mutual Fire Insurance Co. v. Hallock,* 10 Sadler 386; *Fidelity & Casualty Co. v. Howe,* 38 F. 2d 741 (3d Cir.) (1930). Accord *Syme v. Bankers National Life Ins. Co.,* 393 Pa. 600, 144 A. 2d 845 (1958). We cannot agree with the Insurance Company that the above omissions were harmless error or that the aforesaid interpretation and construction of The Insurance Department Act is unreasonable, even though in the present case, according to the contention of the Insurance Company, it will sanctify a fraud. " 'When the words of a law are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext* of pursuing its [real or supposed] spirit' ": *Garratt v. Philadelphia,* 387 Pa. 442, 445-446, 127 A. 2d 738; Statutory Construction Act of May 28, 1937, P. L. 1019, §51, 46 PS §551. We note that the Statute of Frauds, the Dead Man's Act of May 23, 1887, P. L. 158, §5(e), 28 PS §322, the Parol Evidence Rule, and several others which will occur to everyone, which are intended to eliminate and prevent fraud, occasionally aid in the perpetration of injustice and/or fraud.

It is unnecessary to consider any of the other contentions made by plaintiff.

Order reversed, with directions to the lower Court to enter judgment for plaintiff.

---

* Not an aptly chosen word. The thought could have been more appropriately expressed "under a natural desire to carry out what a Court believes is the real or supposed spirit and/or purpose of the Act."