## Loucks v. Crowther

*Rogers & O'Neill*, for plaintiff.

*Francis X. Hope, Jr.*, for defendant.

KURTZ, J., August 27, 1963.—Plaintiff, averring that he "is an individual residing at Winding Way, Malvern, Pa., and a resident of East Whiteland Township . . .", this county, has filed a complaint in equity naming the owners of the equitable and legal titles of certain real estate therein described situate within said township as defendants, by which he seeks to have defendants enjoined from quarrying on their premises and to have a permit "granted to the plaintiffs," (sic) issued by the township supervisors permitting such quarrying declared null and void. Defendants have filed preliminary objections to the complaint in the nature of a demurrer. The objections assert that the complaint fails to state a cause of action upon which relief can be

granted either in equity or at law because: (1) It shows on its face that it rests on the erroneous conclusion of law that the permit here under attack is null and void, and (2) it fails to allege a cause of action cognizable in equity in that it fails to aver facts to support plaintiff's claim that he has been irreparably harmed by the granting of the permit. The preliminary objections admit as true all facts which are well pleaded but not the pleader's conclusions or averments of law: Stahl, Attorney General v. First Pennsylvania Banking and Trust Company, 411 Pa. 121, 126 (1963). We must examine the complaint to determine what facts it has pleaded well.

In addition to the allegation referred to above concerning plaintiff's place of residence, his complaint asserts that defendant, Rae Crowther, is engaged in the business of quarrying stone in East Whiteland Township under the fictitious name "Valley Forge Stone Company," and that he is the equitable owner and certain other defendants are the legal owners of a tract of land located at the intersection of Swedesford and Morehall Roads in said township, therein described. It is further averred that said land is located within an "A/Rural Residence District" under the zoning ordinance of the township which provides in section 301-6 that in such a district land may be used or occupied, inter alia, for mining, quarrying and/or processing of natural resources obtained on the site when authorized by the board of supervisors "upon recommendation of the Board of Adjustment after public hearing before said Board of Adjustment." (It will be noted that the complaint itself makes reference only to subparagraph 6 of section 301. The introductory paragraph of that section which recites that "a lot may be used or occupied, for any of the following purposes and no other" is not mentioned therein.)

Plaintiff's complaint also alleges that in the fall of

1960, certain persons, one of whom was defendant Rae Crowther, petitioned the board of adjustment for a permit to operate a quarry on said land; that hearings were held, after which, on December 14, 1961, said board rendered a decision in which it did not recommend that a permit be granted; that on December 26, 1961, the board of supervisors granted to Valley Forge Stone Company a permit to quarry; that this plaintiff with others then appealed the granting of that permit to the board of adjustment, which, after holding two public hearings on the questions so raised, rendered a decision in which it held that it had jurisdiction to hear the appeal but not jurisdiction to determine it; that plaintiff and others then appealed to this court, after which defendants were permitted to intervene as interested parties, and that upon the filing of preliminary objections in that proceeding by defendants here, intervenors there, which asserted that the appeal was not timely, the appellants moved to withdraw their appeal "because it was not their proper remedy at law."

In paragraph 17 of the complaint, plaintiff asserts that the permit is null and void because: (a) The supervisors had no authority to issue it under the provisions of The Second Class Township Code; (b) the supervisors are not authorized to grant such a permit under the provisions of the zoning ordinance; (c) that section 301-C [sic], properly 301-6 of the zoning ordinance, is invalid in that it permits a shifting zone and purports to relegate to the supervisors power already given to the board of adjustment by The Second Class Township Code; and (d) that said section of the zoning ordinance "violates the rights of the plaintiff under the Constitution of Pennsylvania and under the Constitution of the United States." A second paragraph numbered 17 alleges that "plaintiff, being the owner of real estate, in East Whiteland Township in the immediate vicinity of the above-mentioned tract of land, has been

irreparably harmed by the granting of the above-mentioned permit for which he has no adequate remedy at law."

We will first consider whether plaintiff's complaint states a cause of action cognizable in equity. We believe it does not.

It has long been held that equity is without power to entertain a challenge to the validity of a zoning ordinance. The reasons behind that rule were recited by the Supreme Court in an opinion by Chief Justice Stern in Knup v. Philadelphia, 386 Pa. 350, 353 (1956), when he said:

"In the first place, it is hornbook law that equity will not act where, as here, there is an adequate remedy at law. In the second place, it is equally well established that a court will take jurisdiction only in a case in which a challenged statute, ordinance, or rule of court has been actually applied to a litigant; it does not undertake to decide academically the unconstitutionality or other alleged invalidity of legislation until it is brought into operation so as to impinge upon the rights of some person or persons. In the third place, where, as here, a remedy or method of procedure is provided by an act of assembly, the directions of such act must be strictly pursued and, under the Act of March 21, 1806, 4 Sm. L. 326, §13, such remedy or procedure is exclusive."

In a footnote to the above quotation it was pointed out that although equity has restrained the collection of taxes under invalid laws or where property is exempt from taxation, in all such cases action was instituted only after the tax had been assessed against the property in question. That opinion reviewed many of the Pennsylvania cases dealing with this question. Of those reviewed, attacks upon such ordinances through the intervention of equity were only sustained in three

instances: Fierst v. William Penn Memorial Corporation, 311 Pa. 263 (1933); Kline v. Harrisburg, 362 Pa. 438 (1949); and Kelly v. Philadelphia, 382 Pa. 459 (1955). In each such case unusual facts were present which made the intervention of equity imperative if the complainants were to be afforded any relief at all. Such facts are not present in the case now before us.

In Oteri Appeal, 372 Pa. 557 (1953), the owner of property adjoining that for which a variance from the provisions of the zoning ordinance had been granted sought to have the board of adjustment's order granting the variance declared null and void by a court sitting in equity. This action was taken by the complainant after the Statute of Limitations had run against the taking of an appeal from the decision of that board. Although plaintiff alleged that she had no knowledge of the hearing before the board of adjustment at which the granting of the variance was approved, the Supreme Court said, page 561, "Since the statuory procedure for appeal from a decision of the Zoning Board was not followed, the court was without jurisdiction to entertain the bill in equity. . . . complainant . . . could not resort to a bill in equity in circumvention of the remedy afforded by the statute."

In the instant case we find no facts averred in the complaint which take it out of the operation of the general rule. There is a statutory procedure prescribed for one who seeks to raise the questions raised by the plaintiff in his complaint. The Second Class Township Code as last amended by the Act of August 25, 1959, P. L. 753, sec. 1, provides:

"(d) Appeals to the board of adjustment may be taken by any person or township official aggrieved or affected by any provision of the zoning ordinance or by any decision, including any order to stop, cease and desist issued by any administrative officer, hereinafter

called the zoning officer, charged with enforcing the provisions of the zoning ordinance."

It also provides:

"(i) Any person aggrieved by any decision of the board of adjustment or any taxpayer or the board of supervisors may, within thirty days after such decision of the board, appeal to the court of common pleas . . ." This procedure was held to be the exclusive method for the testing of the validity of a zoning ordinance of a second class township in Castle Shannon Coal Corporation v. Upper St. Clair Township, 370 Pa. 211 (1952).

Indeed, this plaintiff undertook to follow that procedure by filing a petition for appeal with this court. Defendants were allowed to intervene without objection in the proceeding, after which they filed preliminary objections, pointing out that the appeal was not taken within the 30-day period allowed by the statute. It was then that plaintiff and his coappellants decided, as he avers in his complaint, that the appeal was not their proper remedy at law. As we have seen in Oteri, supra, the fact that one delays in the taking of his appeal beyond the period allowed by the statute does not permit him then to resort to equity.

Nor do we believe that the peculiar provisions of section 301-6 of the ordinance now under consideration furnish a basis for the intervention of equity. It provides for the granting of a permit to quarry by the Board of Supervisors, whereas in the usual case such a permit would be issued by the zoning officer. Section 1(d) of the Act of 1959, supra, designates the appeal to the board of adjustment to be the procedure to be followed by those persons whom it names who may be "aggrieved or affected by any provision" of the ordinance. Plaintiff here claims to be affected by section 301-6. He challenges its validity and constitutionality. We cannot discern any fundamental distinction between an attack upon the permit itself and an attack

upon the ordinance which authorizes its issuance. Plaintiff does not here question the supervisors' judgment or discretion in issuing a permit; he questions their power or authority to issue it under law.

Neither do we think that the appeal procedure outlined above is limited in this case by the provisions of subsection (g) of the Act of 1959, supra, or by the fact that under the terms of the ordinance itself the board of adjustment has already expressed an opinion as to the propriety of granting this permit when it made its recommendation of December 14, 1961, to the board of supervisors.

An historical review of the legislation out of which the present procedure has grown will so demonstrate. The Second Class Township Code, the Act of May 1, 1933, P. L. 103, contains no provisions relating to zoning. By the Act of July 10, 1947, P. L. 1481, the Act of 1933 was reenacted, amended and revised. Article XX was then designated to be the zoning article and in section 2007 it was provided, inter alia:. . . "Appeals to the board of adjustment may be taken by any person aggrieved or affected by any decision of the supervisors . . ."; that the board of adjustment shall have the power: "(1) To hear and decide appeals where it is alleged there is error in any order, requirement, decision or determination made by the supervisors in the enforcement of this article or of any ordinance adopted pursuant thereto"; and that any person aggrieved by any decision of the board of adjustment could then appeal to the court of common pleas.

In 1953, the code was again amended by the Act of July 2, 1953, P. L. 354. It added a township official as one of the persons entitled to appeal to the board of adjustment if aggrieved or affected by any . . . "provision of the zoning ordinance or by any decision of any administrative officer, hereinafter called the zoning officer, charged with enforcing the provisions of the

zoning ordinance." The word "supervisors" contained in the Act of 1947, as being the authority from whose decision the appeal might be taken, was deleted. The Act of 1953 also substituted the words "zoning officer" for the word "supervisors" in that part of the section which defined the powers of the board of adjustment upon appeal.

In the amendment of 1956, the Act of June 1, 1956, P. L. (1955) 2021, that portion of the paragraph conferring the right to appeal to the board of adjustment was further amended by deleting the word "of" which had theretofore followed the words "any decision" and preceded the words "any administrative officer" and inserted in that position the words "including any order to stop, cease and desist issued by." In that portion of the section dealing with the powers of the board of adjustment the words "including any order requiring an alleged violator to stop, cease and desist," were inserted between the word "determination" and the words "made by." The Act of 1959 cited above follows the language of the 1956 amendment.

The foregoing recitation makes it clear, we think, that the legislature intended to and, in fact, did enlarge the class of decisions and determinations from which appeals to the board of adjustment could be taken. Under the Act of 1947, that class was limited to the decisions of the supervisors: In re: Application of Devon Show Grounds, Inc., 5 Chester 120 (1952). By each subsequent amendment the class was made larger until the present time when it includes not only those provisions of an ordinance which aggrieve or affect any person but also those decisions of *"any"* administrative officer which have a like effect. We have held that the action of the supervisors in granting the permit now under attack was the performance of an administrative function: In re: East Whiteland Township Zoning Board, 28 D. & C. 2d 107 (1962). When

acting in that capacity the supervisors fall within the classification of "any administrative officer" from whose decision an appeal to the board of adjustment may be taken.

We believe also that it cannot be successfully argued that the board of adjustment has already passed judgment upon the questions when it made its recommendation to the board of supervisors against the issuance of the permit on December 1961, and for that reason should not be called upon again to do so. At that time it was acting as the investigatory agency of the board of supervisors. When sitting as an appellate tribunal designated by the township code as the reviewing authority in zoning matters, it reviews not only the decisions appealed from to decide whether or not there was error in the decision itself, but it also passes upon the validity and constitutionality of the ordinance adopted by the Board of Supervisors which appointed it: Jacobs v. Fetzer, 381 Pa. 262, 267 (1955). It then becomes obvious that under section 301-6 of the East Whiteland Township Ordinance, the board of adjustment is authorized to function in two capacities. Prior to action by the board of supervisors, it does the investigating for and makes recommendations to the board. After action by the supervisors it sits as the reviewing authority upon such action to hear and decide such questions as might be properly presented to it upon appeal.

Parenthetically we note that the board of adjustment held that while it could entertain the questions presented to it by appellants when the appeal was taken, it could not decide the questions so raised. In the decision which it rendered, which is now of record in this court since the board made its return to our writ of certiorari before appellants moved to withdraw their appeal (In re Permit of Valley Forge Stone Company

—Appeal of William D. Loucks et al., December term, 1962, no. 92), it was said:

"For us, to rule upon, determine or decide the questions raised by this Appeal would mean that this Board, created by the Supervisors, would be declaring either valid or invalid the acts and actions of the appointing body. As stated by the Court in Miller Appeal, Lichtenfeld Appeal, 8 Chester County Reports 129 (1957), for this Board to assume such power, 'would be inincongruous, to say the least.' It is our understanding that this Board has the power to decide only those appeals and matters specifically set forth in the Second Class Township Code."

We do not believe that the board of adjustment sitting in judgment of the decision of the body which appointed it is as incongruous as might at first blush appear. The members of that board are appointed for a fixed term and can only be removed for cause upon written charges and after hearing: Act of 1959, supra, section 1(b). Capricious or unwarranted removal of a member would not then be possible.

Furthermore, the creation of a body to sit in review or judgment of the acts of the authority which created it is not an unusual situation in our governmental scheme of things. The legislature, by the adoption of the Act of June 24, 1895, P. L. 212, sec. 7, created the Superior Court, bestowing upon it jurisdiction to pass upon the constitutionality or validity of those Acts of Assembly which properly come before it: The Act of 1895, supra, as last amended by the Act of May 8, 1956, P. L. (1955) 1540, sec. 1.

Although the legislature does not possess the power to appoint judges to that court, it does retain the power to impeach such judges as such power is vested in it by the Constitution of Pennsylvania, article V, sec. 15. The same situation prevails with the judges of the

county courts of Philadelphia and Allegheny counties and with the judges of the various orphans' courts.

The legislature made it clear when it adopted the provisions of The Second Class Township Code pertaining to zoning that the board of adjustment was intended to sit in judgment of the constitutionality and validity of the zoning ordinances adopted by the supervisors and to make decisions concerning the interpretation of those ordinances: The Act of 1959, supra, section 1(d); Jacobs v. Fetzer, supra. We can see no difference between the board of adjustment's passing on the validity or constitutionality of an ordinance in one case and its sitting as the reviewing agency upon the granting of a zoning permit by the supervisors in another. In either instance it sits in judgment of the action of the authority which created it and appointed its members.

But more basically, we believe that this plaintiff has not pleaded facts which bring him within the class of those entitled to be heard in equity. He asserts merely that he is a resident of the township, the owner of real property in the immediate vicinity of the defendants' property and that he has been irreparably harmed and is without an adequate remedy at law. He does not say how he has been irreparably harmed, nor does he explain in what manner the remedies at law open to him are inadequate. He does not say how closely his property is located to that of the quarry site, or whether he is complaining about noise, dust, smoke or the fact that the value of his property has been or will be depreciated. He does not spell out what rights under the Constitution of this State or the United States have been violated. The mere allegation of these formal conclusions is not sufficient to invoke the aid of a court of equity: Hyam v. Upper Montgomery Joint Authority, 399 Pa. 446 (1960); Baer v. Lonsdorf, 390 Pa. 175 (1957).

Plaintiff cites our opinion in Cleaver Appeal, 24 D. & C. 2d 483 (1961), as authority in support of his standing to maintain this action. What we there said is not helpful to him. We there held that the individual owners of properties located directly across the street from and in the neighboring area to a tract for which the zoning officer had issued a permit to build apartment houses were "persons aggrieved or affected" by the issuance of that permit and by an amendment to the zoning ordinance which rezoned that tract so that apartment houses might be built upon it. We did not say that such persons suffered irreparable harm or that they had no adequate remedy at law.

Since plaintiff has failed to demonstrate that he is entitled to equitable relief, defendant's demurrer must be sustained. In arriving at that conclusion, we are mindful of the rule which requires that final judgment against a plaintiff should only be entered upon demurrer in a case which is clear and free from doubt: Ross v. Metropolitan Life Insurance Company, 403 Pa. 135 (1961) ; Gardner v. Allegheny County, 382 Pa. 88 (1955). However, we do not believe that this plaintiff will be able to aver additional facts in an amended complaint which will take his case out of the general rule and permit him to pursue his attack upon this ordinance in a court of equity. We believe that his proper remedy was by way of appeal under the statutory procedures outlined above and that since he has not availed himself of that procedure, his remedy is forever lost.

In the light of these circumstances, it then becomes unnecessary for us to determine whether or not the permit to quarry is valid or invalid. No further consideration of that matter is required; hence, no opinion on that subject is here expressed. We enter the following

*Order*

And now, August 27, 1963, defendants' preliminary objections are hereby sustained. Judgment is entered in favor of defendants and against plaintiff.